[Crim. No. 4920.   First Dist., Div. Three.   Nov. 30, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. ERNEST VIALLADA PINEDA, Defendant and Appellant.

Paul N. McCloskey, Jr., under appointment by the District Court of Appeal, and McCloskey, Wilson, Mosher & Martin for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Jay S. Linderman, Deputy Attorneys General, for Plaintiff and Respondent.

DEVINE, J.—In this appeal from a conviction for illegal possession of heroin, appellant's two points are: (1) that the judge coerced the jury, and (2) that there was error in the sentencing. There is no challenge to the sufficiency of the evidence to support the conviction.

Officers armed with a search warrant entered a room which was occupied by appellant, appellant's brother Charles, and Joe Gracia. Charles was under the influence of a narcotic.

Gracia had been convicted of possession of narcotics previously. One of the officers testified that he saw an envelope in the hand of appellant and that appellant dropped it to the floor. The envelope contained heroin. Another officer testified that he saw the envelope on the floor at the feet of appellant. Appellant testified that he knew nothing of the envelope until the officers showed it to him. Charles testified that appellant did not have the envelope in his possession but declined to answer whose heroin it was, on the ground it might incriminate him. Gracia testified that earlier in the evening he had seen the envelope in the possession of Charles. Obviously, if the jury were to believe the testimony of the officers, the conviction of appellant would be assured. Susan Pineda, appellant's sister, testified that she was in the room when an envelope was found, and that Officer Calvino, who had testified that he had seen the envelope in appellant's hand, did not say anything about how the envelope got to the floor. Officers Calvino and Perovich had both testified that Calvino had called Perovich's attention to the envelope as it lay close to the place where appellant was standing.

### Alleged Coercion of the Jury

Thirty minutes after the jurors had retired, they returned to have Susan's and Gracia's testimony read. Later, they returned to ask for the reading of testimony of Calvino and of appellant. The testimony was read to them, but only after the judge had reproved the jurors, saying that because the testimony of the whole case took only about two hours, either the jurors had not paid attention or were not discussing the case aright in the jury room. The judge told the jury to imagine what they would do with a case that might have taken two weeks to try. He said, however, that he would have all of the testimony read and would reinstruct the jurors if they wished, "to the end that we get a verdict." The judge gave a rather lengthy identification of the various witnesses and a recounting of the order in which they had testified. Toward the end of the comments, the judge modified his remarks and showed himself quite agreeable to having any testimony read which the jury would like to hear.

Appellant argues that the burden of the judge's remarks was that the case was a simple one and that the jury ought to be able to reach a verdict. He had manifested, says appellant, a clear dissatisfaction with the jury's request for reading of

the testimony. Appellant points out that the jury returned with the verdict 15 minutes after the testimony was read.

We do not regard the judge's comments as constituting an exhortation to find a verdict of guilty. The judge did show annoyance that the jury could not recall the evidence without assistance. But there is nothing to indicate that at this time the jury was in disagreement or that it had even taken a ballot. Following a reading of the testimony, the judge made no comment whatever as to desirability of coming to agreement quickly or, indeed, of coming to agreement at all. There was no urgency by reason of lateness of the hour, because the verdict was returned at 3:55 p.m. The case is to be distinguished from those cited by appellant: *People* v. *Kindleberger*, 100 Cal. 367 [34 P. 852], in which the judge said he was utterly at a loss to know why 12 honest men could not agree in the case after they had been out 13 hours and sent the jury back for deliberations, with a ringing declaration against unreasonably refusing to listen to the opinions of other jurors; *People* v. *Conboy*, 15 Cal.App. 97 [113 P. 703], in which the judge expressed surprise that the jury had not reached a verdict, there being no reason why 12 honest and intelligent men should not have done so, and directed the jury to go out and do its duty; *People* v. *Crowley*, 101 Cal. App.2d 71 [224 P.2d 748], in which the judge told a disagreeing jury that the evidence was plain and clear and that if the jurors did not reach a verdict by 5 p.m. they would be locked up for the night, and the jury did return at exactly 5 p.m. with a guilty verdict; *People* v. *Crossland*, 182 Cal. App.2d 117 [5 Cal.Rptr. 781], in which the judge told the jury, split ten to two after about eight hours of deliberation, that the case was probably the most simple of all in his experience of over a thousand trials and that he was baffled by the situation (the judge's comment, it was held, probably meant that the case was simple on the law but could well have been interpreted to refer to the simplicity of the evidence).  ▪ Reference to the desirability of reaching a verdict, without indicating which verdict it should be, is not necessarily coercion of the jury. (*People* v. *Burton*, 55 Cal.2d 328, 354-357 [11 Cal.Rptr. 65, 359 P.2d 433].)  ▪  In the case before us, there was but one reference to a verdict and this was in the middle of the fairly lengthy comments of the judge. It was an offer of the judge to reinstruct, if this were desired, for the purpose of getting "a verdict." Following this rather colorless remark, there was not only the identifi-

cation of the witnesses, which was referred to above, but also the reading of the testimony of appellant and of Calvino. The comments of the judge did not coerce the jury.

### The Sentencing

■ Appellant makes the point that he was sentenced as having two prior felony convictions although his first prior, for possession of marijuana, had resulted in a county jail sentence. Appellant contends that the term "felony offense," as contained in section 11504 of the Health and Safety Code, cannot be applied retroactively to make the effect of what was a misdemeanor at the time of its commission the basis of a heavier sentence than he would otherwise have received.

Appellant is correct, as the Attorney General admits, in stating that his first narcotics offense was a misdemeanor because it was punished by county jail sentence. (Pen. Code, § 17.) It still is a misdemeanor, concedes the Attorney General, and, indeed, this must be so because an offense cannot be enlarged after its commission by reason of the prohibition of ex post facto laws. (U.S. Const., art. I, § 9; Cal. Const., art. I, § 16.) Actually, however, the district attorney charged this first prior as a felony, defendant admitted it as a felony, and the judge, in sentencing appellant, referred to his two prior felony convictions, although he had committed but one.

Respondent contends, however, that the error is immaterial because under section 11504 of the Health and Safety Code, enacted in 1961, the term "felony offense" refers to an offense for which the law prescribes imprisonment in the state prison as either an alternative or the sole penalty, regardless of the sentence the particular defendant received. Under section 11500 of the Health and Safety Code, as amended in 1961, a person who has been convicted two or more times of any felony offense described in the division in which the section appears, as found true by the jury or by the court on a court trial, or as admitted by the defendant, is to be imprisoned in the state prison from 15 years to life. Therefore, says respondent, although appellant's first offense was a misdemeanor, it is now and has been since 1961 a "felony offense" and brings about the same minimum term of imprisonment as if appellant had been convicted twice previously of narcotics felonies.

We agree with the argument of the Attorney General, in part. The punishment is for the new crime only, although it is more severe than it would have been before the enactment

of section 11504. (*People* v. *Calderon,* 205 Cal.App.2d 566, 572 [23 Cal.Rptr. 62]; *People* v. *Wallace,* 59 Cal.2d 548 [30 Cal.Rptr. 449, 381 P.2d 185]; *People* v. *Garcia,* 227 Cal.App. 2d 345 [38 Cal.Rptr. 670].) Appellant, therefore, has no ground of complaint that the statutes have been changed retroactively.

■ But we cannot say that appellant suffered no prejudice by the fact that he was erroneously charged with two prior felonies involving narcotics and that he admitted, erroneously, commission of two prior felonies when one was actually a misdemeanor. At the time of commission of the present offense and at the time of sentencing, the judge had it within his power to order commitment of appellant under the beneficent provisions for rehabilitation and treatment of narcotic addicts (Welf. & Inst. Code, § 3051; Stats. 1965, ch. 1226, which at the time of sentencing was Pen. Code, § 6451). If the judge had known that appellant's prior offenses had not actually been two felonies, but one felony and one misdemeanor, it may well be that he would have used the commitment procedure. A brief history and a statement of the policy of the law as expressed by the Legislature and the courts, follow in order to explain our reasons for remanding the case for sentencing.

In 1959 the power of dismissing priors was taken away from the judge, except upon motion of the district attorney. (Health & Saf. Code, § 11718.) In 1961 sections 11500 and 11530 were amended to increase penalties for narcotics generally and marijuana, respectively. In the same year, section 11504 was enacted, which, as stated above, provides that narcotics offenses which could have been felonies or misdemeanors, depending on the punishment actually meted out, are felony offenses when considered as prior convictions. Thus, appellant, having been convicted of two prior felony offenses under the narcotic laws, must be imprisoned in the state prison from 15 years to life and is not eligible for release on parole or any other basis until he has served 15 years. (Health & Saf. Code, § 11500.) He must serve 180 months. A comparison of the median time served in months for other offenses, by the latest available statistics, shows the following: first degree murder, 150 months; second degree murder, 64 months; robbery with a deadly weapon, 38 months; first degree burglary, 35 months; rape, 38 months; lewd acts with children, 30 months; escape from prison, 39 months. Parolees who have been returned to prison with a

new commitment have served a median time of 31 months, this figure not being classified by offense groups. (These figures are taken from California Prisoners, A Summary of Statistics of Felon Prisoners and Parolees (1963), published by the California Department of Corrections, pp. 105, 110.)

But in 1961 the Legislature also provided for the commitment and corrective treatment of narcotic addicts, both persons guilty of offenses against the narcotics laws and persons not charged with crime. (Pen. Code, §§ 6399-6555, now Welf. & Inst. Code, §§ 3000-3305.) By the terms of section 6451 of the Penal Code, a defendant convicted of any crime in the superior court, who is found to be a narcotic addict or in danger of becoming one, may be committed for rehabilitation unless in the opinion of the judge the defendant's record and probation report indicate such a pattern of criminality that the defendant does not constitute a fit subject for commitment. Between 1961 and 1963 the provisions of section 6451 were not available to persons who would have a minimum term of more than five years (Pen. Code, § 6452), but in 1963 section 6451 was amended to allow the judge to use the commitment procedure in unusual cases, with the concurrence of the district attorney and of the defendant, even if the defendant's minimum term exceeds five years. Thus, at the time of appellant's sentencing he was eligible for such commitment. The Bureau of Criminal Statistics of the California Department of Justice reports in a publication entitled Drug Arrests and Dispositions in California (1964), at page 20, that felons facing lengthy prison minimums look with favor on the rehabilitation program, even with its intensive parole followup.

The Legislature has declared its intent that in general addicts shall be treated for their condition and its underlying causes. (Welf. & Inst. Code, § 3000; Stats. 1965, ch. 1226.) The Supreme Court has stated that the discretion vested in the court should be exercised with a view to implementing the strong legislative policy disclosed by the enactments creating and governing the narcotic addict rehabilitation program. That policy favors inquiry into the addictive status of *all* criminal defendants whose records indicate the presence of an addiction problem. (*People* v. *Ortiz,* 61 Cal.2d 249, 254-255 [37 Cal.Rptr. 891, 391 P.2d 163].)

Turning now to appellant's case, we find that two mistakes were made. First, there was the error of charging two

felonies instead of one felony and one "felony offense."
Perhaps, the judge would have rendered the same sentence
anyway, and perhaps he did have in mind the fact that
appellant was not a twice convicted felon, but we cannot be
sure of this; and because the sentence is so long and so abso-
lute, admitting of no modification and imposing an almost
Dantesque abandonment of hope, we think that the judge
should have the opportunity, as well as the responsibility, of
sentencing while possessed of exact information about the
prior offenses. The second mistake was this: appellant's plea,
before sentence, for a lesser punishment than that which
finally was imposed, was considered, it seems, as an applica-
tion for probation. This was completely hopeless because, by
the provisions of section 11715.6 of the Health and Safety
Code, appellant was ineligible for probation. No reference
was made to possible commitment for rehabilitation.

We do not know much about appellant, except that he
testified that at the time of the offense he was on parole, was
employed, and was taking Nalline tests, and that his record
makes no showing of sale of narcotics; but it is not our right
or duty to decide what is to be done with him. We realize
there is a distinction between this case and those of *People* v.
*Wallace, supra,* 59 Cal.2d 548, and *People* v. *Ortiz, supra,* 61
Cal.2d 249, in each of which the judge expressed his regret
that he could not under the circumstances make use of the
provisions of Penal Code section 6451, and in each case the
judge was mistaken; but in the case before us there is com-
plete absence of reference to section 6451, combined with the
mistakes aforementioned. ▮ Where, as here, the penalty
for the crime is extremely harsh and the program of rehabili-
tation strongly supported by public policy, and we are not
assured that the sentencing judge was enabled to evaluate
properly the possibility of rehabilitation for this appellant,
we deem it proper to remand the case for sentencing. It is to
society's benefit to see that the fullest consideration is given to
the rehabilitative facilities for narcotic addiction. The *Wal-
lace* and *Ortiz* cases constitute ample if not exact precedent.

The judgment, insofar as it decrees the sentence as
entered, is reversed and the cause is remanded for further
proceedings in conformity with this opinion.

Draper, P. J., and Salsman, J., concurred.

Appellant's petition for a hearing by the Supreme Court
was denied January 26, 1966.