[Crim. No. 10194.  Second Dist., Div. One.  Sept. 27, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. CHARLES GONZELO SILVA, Defendant and Appellant.

Dahlstrum, Walton, Butts & Bergman, Richard A. Walton and G. Merle Bergman for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—The trial court found defendant guilty on three counts (I, II, III) of selling and one count (IV) of furnishing marijuana in violation of section 11531, Health and Safety Code, and two prior (1951, 1952) felony narcotic (marijuana) convictions (§ 11500, Health & Saf. Code) to be true. Timely appeal was filed. On May 6, 1965, this court filed its opinion affirming the judgment; petition for rehearing and petition for hearing by the Supreme Court were denied. Two years later appellant filed motion to recall remittitur denied by this court November 24, 1967. Thereafter, treating appellant's petition for writ of habeas corpus as an application to recall remittitur, the Supreme Court directed this court to recall its remittitur, vacate its judgment and proceed in accord with *Anders* v. *California,* 386 U.S. 738 [18 L.Ed.2d 493, 87 S.Ct. 1396], and *People* v. *Feggans,* 67 Cal.2d 444 [62 Cal.Rptr. 419, 432 P.2d 21]; pursuant to the foregoing directions the appeal has been reinstated. Subsequently appellant filed herein notice of motion for leave to produce additional evidence attached to which was "declaration of Charles Gonzelo Silva"; the motion was denied. (The declaration of appellant, not a part of the record below, is not part of the record on appeal [*People* v. *Shaffer,* 182 Cal.App.2d 39, 45-46 [5 Cal.Rptr. 844]].)

The following evidence was adduced at the preliminary hearing. Count I—Joe (Jose) Gonzales told State Narcotic Agent Edward Noriega that he could make a purchase of marijuana at defendant's address in Canoga Park; on June 3, 1963, around 8 p.m. Gonzales took him to defendant's residence; the agent went there for the purpose of buying marijuana; he paid $30 to defendant in return for which defendant gave him two bags of marijuana (Exh. 1); this was the first time the agent had met defendant. Count II—Around 6:15 p.m. on June 14, 1965, State Agent Paul Edward Pulliam met defendant near the intersection of Winnetka and Saticoy in Canoga Park; he paid defendant $30 for which defendant gave him two wax paper bags containing marijuana (Exh. 2). Count III—Agent Noriega again saw defendant on July 2, 1963; around 6 p.m. he met defendant in a liquor store parking lot near the intersection of Saticoy and Winnetka in

Canoga Park where he gave defendant $160 for which defendant gave him a grocery bag containing a brick of marijuana (Exh. 3). Count IV—Around 9 p.m. on September 23, 1963, Agent Noriega went to defendant's residence in Canoga Park, at which time defendant gave him a bag of marijuana (Exh. 4) for which he paid nothing.

On October 31, 1963, Robert Stanley, who represented defendant at the preliminary hearing, was in superior court for arraignment but defendant failed to appear necessitating order forfeiting bail and directing the issuance of a bench warrant; on defendant's late appearance, the orders were vacated and bail reinstated. On November 5, 1963, defendant entered a plea of not guilty and denied the priors. The trial was set for December 17, 1963, at which time defendant, with his counsel R. Stanley by J. White appeared, but the trial was continued to the next day to enable defense counsel to be present. On Decemebr 18, 1963, defendant appeared with his counsel R. Stanley by K. Foley. At the outset Mr. Foley stated: "My name is Kenneth Foley. May the record show I am appearing here for Robert Stanley in this matter and it is to be submitted if the court please?" Thereafter, defendant personally waived his right to a trial by jury of the case-in-chief and the matter of the priors; defense counsel and the People joined in the waivers. The prosecutor then offered the stipulation that the case-in-chief be determined on the testimony taken at the preliminary hearing, and on the 1951 prior offered in evidence as Exhibit 5, by reference, the superior court file in *People* v. *Silva*, No. 136814 (microfilm) with the request that the court order the microfilm, which it did, and on the 1952 prior, as Exhibit 6, abstract of judgment in the superior court case, *People* v. *Silva*, No. 142598, and certified copy of records of Department of Corrections pertaining to defendant and his prison record. At the request of Mr. Foley, further trial was continued to January 14, 1964.

However, on January 14, 1964, defendant failed to appear; the court ordered bail forfeited, issuance of a bench warrant and the cause off calendar. Apprehended several months later, defendant, in custody, was present with his counsel Robert Stanley on March 24, 1964, for further trial. The court advised that it had read the entire transcript and, no further evidence having been offered and the cause having been submitted without argument, found defendant guilty on all counts and "the priors . . . to be true." Defendant appeared with Robert Stanley for hearing on the probation

officer's report and for judgment and sentence on April 14, 1964; after arraignment for judgment Mr. Stanley said: "I just would point out to your Honor that I think that he has faced up to his responsibilities after he has realized that he was wrong. He ran away and then he turned himself in and he wants to get this matter over with." The court responded: "I know, but this amounts to a sale of a considerable amount of marijuana. This isn't child's play, you know," to which Mr. Stanley said, "I agree." The court denied probation and sentenced defendant to the state prison on all counts, the sentences to run concurrently with that imposed on count I.

For reversal appellant relies on the claim of denial of due process at his trial "in that representation by counsel was a sham and an ineffectual formality only." We conclude this and his other contention to be without substance and that the judgment must be affirmed.

The record fails to show as it did in *People* v. *Ibarra,* 60 Cal.2d 460 [34 Cal.Rptr. 863, 386 P.2d 487], relied upon by appellant, that he did not have diligent and reasonably competent representation by trial counsel in the court below, nor does it show that he availed himself of the privilege of complaining at the trial level that his counsel was not adequately representing him. (*People* v. *Monk,* 56 Cal.2d 288, 299 [14 Cal.Rptr. 633, 363 P.2d 865].) The explanation for this is found in the factual complexion of the case which demonstrates that counsel was in a position to exercise his professional judgment, did so, and adopted such strategy and tactics as he deemed to be in the best interest of his client, and that defendant's dissatisfaction with his conduct of the case did not develop until on appeal. The evidence reflected in the preliminary transcript is simple, direct, clear and undisputed. The amount of marijuana sold, the price paid, the direct dealings with defendant, the number of sales, the period over which the transactions took place, the locations of the sales, and the use of an informer in making the original contact establish that defendant was engaged in the business of selling marijuana. Proof that twice he had been convicted (January 13, 1951, January 3, 1952) of violations of section 11500, Health and Safety Code (possession of marijuana) in the Superior Court of Los Angeles County, indicates that defendant was no stranger to either the narcotic traffic or local court procedure. His general attitude toward the court is reflected in his late appearance on arraignment and his complete failure to appear for trial necessitating the issuance of a second

bench warrant on which several months later he was brought into court. Inasmuch as appellant indulges in an unbridled excoriation of trial counsel for his conduct of the case and for the sole purpose of establishing appellant's true portrait, hardly consistent with the premise of innocence and "honest and upright life" on which he predicates his present claim, we refer to his statement to the probation officer and the recital of his past illegal activities set up in the probation report which is contained in the original superior court file brought up by this court on its own motion as part of the record on appeal (rule 12(a), Rules of Court) and which is also contained in the appellate file having been attached by appellant to his notice of motion to recall remittitur filed in this court, as well as to his petition filed in the Supreme Court. The answer to his condemnation of counsel's decision to submit the cause on the transcript of the testimony taken at the preliminary hearing, is found in defendant's acknowledgment of guilt,[1] extensive criminal narcotic record[2] and subse-

---

[1]The probation report shows the following oral statement made by defendant to the probation officer: "That he had managed to keep out of trouble since his last release from jail in 1955; he states that the reason he was able to do so was that he acquired a new religion, which he believes helped him. He states that at the time of his offense, work was slow and that he had a large family to support. He states that he had been smoking marijuana and he knew very easily where to obtain it. He stated he needed the money and when the agents offered him the money, he was tempted. He states that he used the money to support his family. He states that at the time he believes that he had failed in his religious convictions and that when he was on bail, he subsequently jumped bail and went to Mexico."

[2]Probation Report, page 3:

"ARREST RECORD:

        SOURCE OF INFORMATION:
        LACO, CII, PROBATION RECORDS.

8-7-50    PD LOS ANGELES—SUSPICION OF BURGLARY—NO DISPOSITION SHOWN.

10-4-50    SO LOS ANGELES—POSSESSION OF MARIJUANA—ON JANUARY 31, 1951, UNDER SUPERIOR COURT NUMBER 136814, AFTER CONVICTION OF 11500 HEALTH AND SAFETY CODE, THE DEFENDANT WAS PLACED ON THREE YEARS PROBATION. ON JANUARY 17, 1952, PROBATION WAS REVOKED AND DEFNDANT WAS SENTENCED TO ONE YEAR IN THE COUNTY JAIL.
    (THIS WOULD APPEAR TO BE THE FIRST NARCOTICS PRIOR CHARGED IN THE PRESENT INFORMATION.)

6-26-51    PD LOS ANGELES—11500 HEALTH AND SAFETY CODE, TWO COUNTS—ON JANURAY 3, 1952, UNDER SUPERIOR COURT NUMBER 142589, DEFENDANT SENTENCED TO STATE PRISON CONCURRENT ON BOTH COUNTS. HIS TERM WAS FIXED AT ZERO TO SIX YEARS, CONCURRENT, AND HE WAS RELEASED ON PAROLE JANUARY 28, 1954. HE WAS DISCHARGED FROM PAROLE ON AUGUST 19, 1957.
    (THIS WOULD APPEAR TO BE THE SECOND NARCOTICS PRIOR

quent arrest for possession for sale of marijuana (§ 11530.5, Health & Saf. Code)[3] while on bail herein just 19 days before trial. There is nothing in the record to suggest the possibility that defendant did not make the same disclosure of guilt to trial counsel that he made to the probation officer which, nothing appearing to the contrary, we can only assume to be the truth. And inasmuch as one can expect effective legal representation only if he makes full disclosure of all facts to his attorney, we are also entitled to assume that defendant discharged his part of the obligation and fully disclosed to his counsel all facts pertinent to the charges including his marijuana transactions with the agents. This not only accounts for counsel's conduct of the case but points up the real reason defendant made no objection on the trial level to the manner in which his counsel was handling the case. And his numerous prior (1951, 1952, 1955) appearances in court in similar cases further vitiate his present claim that it was because of his ignorance and inexperience that he failed to complain to the trial judge. It should be noted that we are here dealing with selected, not appointed, counsel (*In re Rose,* 62 Cal.2d 384, 389 [42 Cal.Rptr. 236, 398 P.2d 428]) and that until defendant failed to appear for further trial (*after* the cause was submitted) he was free on bail. While these facts are by no means conclusive on the issue they nevertheless serve to help place the matter in its proper perspective.

Appellant divides into two areas the alleged inadequate representation of trial counsel. First, he assails his competence and effectiveness in the sense of strategy, tactics and judgment exercised by counsel during his conduct and control of the case (*In re Rose,* 62 Cal.2d 384, 391 [42 Cal.Rptr. 236, 398 P.2d 428] ; *People* v. *Kirchner,* 233 Cal.App.2d 83, 86 [43

---

CHARGED IN THE PRESENT INFORMATION.)

3-22-55 PD LOS ANGELES—SUSPICION OF NARCOTICS ACT FELONY— ON MAY 20, 1955, SENTENCED TO NINE MONTHS IN THE COUNTY JAIL ON CHARGE OF 11500 HEALTH AND SAFETY CODE.

9-23-63 SO LOS ANGELES—SALE OF MARIJUANA—THIS IS THE PRESENT MATTER.''

[3]Probation Report, page 4:
''11-29-63 PD LOS ANGELES—11530.5 HEALTH AND SAFETY CODE (POSSESSION OF MARIJUANA FOR SALE)—FINAL CHARGE, 11530 HEALTH AND SAFETY CODE (POSSESSION OF MARIJUANA) ; ON 3-26-64, IN DEPARTMENT 100, PLEADED NOT GUILTY. TRIAL SET FOR DEPARTMENT 110 ON MAY 1, 1964.

(WHILE THE DEFENDANT WAS ON BAIL ON THE PRESENT MATTER, HE WAS ARRESTED FOR THIS CHARGE AND IS PRESENTLY AWAITING TRIAL.)''

Cal.Rptr. 218]) by asserting his failure to indulge in lengthy cross-examination at the preliminary hearing, his submission of the cause on the transcript of the testimony taken at the preliminary hearing and his failure to prepare a defense, argue the matter on submission and make a more favorable statement at the time of sentence. Second, appellant attacks the competence and diligence of trial counsel on the basis of his alleged lack of knowledge of the law (*People* v. *Ibarra,* 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487]) and preparation and investigation of the law and the facts (*Brubaker* v. *Dickson,* 310 F.2d 30, 37, 39) by claiming that had he made a reasonable investigation he would have discovered defenses, challenged the prior felony convictions and sought medical help for him.

■ ''To justify relief on the ground that counsel was inadequate, it must appear that the trial was reduced to a farce or sham through the attorney's lack of competence, diligence, or knowledge of law. (*People* v. *Ibarra,* 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487].) ■ If a crucial defense is withdrawn from the case through the failure of counsel to investigate carefully all defenses of fact and law, the defendant has not received adequate representation. (*People* v. *Mattson,* 51 Cal.2d 777, 790-791 [336 P.2d 937].)'' (*In re Beaty,* 64 Cal.2d 760, 764 [51 Cal.Rptr. 521, 414 P.2d 817].) ■ ''Defendant has the burden, moreover, of establishing his allegation of inadequate representation 'not as a matter of speculation but as a demonstrable reality.' (*Adams* v. *United States* ex rel. *McCann* (1942) 317 U.S. 269, 281 [87 L.Ed. 268, 275, 63 S.Ct. 236, 143 A.L.R. 435]; accord, *People* v. *Robillard* (1960) *supra,* 55 Cal.2d 88, 97 [10 Cal.Rptr. 167, 358 P.2d 295, 83 A.L.R.2d 1086].)'' (*People* v. *Reeves,* 64 Cal.2d 766, 774 [51 Cal.Rptr. 691, 415 P.2d 35].) Here appellant has failed to sustain his burden; the record simply does not admit the application of the rule announced in *People* v. *Ibarra,* 60 Cal.2d 460 [34 Cal.Rptr. 863, 386 P.2d 487], or *Brubaker* v. *Dickson,* 310 F.2d 30.

■ To establish his claim that counsel submitted the cause on the preliminary transcript and offered no defense because he did not prepare and had no familiarity with the case, lacked concern for his client and was interested only in a fee, appellant cites his counsel's failure to engage in lengthy cross-examination, use the preliminary hearing as a ''discovery procedure'' to check defenses, names of witnesses and the

agents' memory, and challenge the priors. The record does not support such a claim but does point up the true reason for counsel's conduct of the case—his knowledge that defendant was guilty, had an extensive criminal record and had been arrested for a similar offense while on bail, and the devastating nature of the evidence against him. The issue then becomes one of strategy or trial tactics—the most effective way for counsel to maintain a favorable impression for his client and present him in the best possible light. At the preliminary hearing counsel was faced not only with what defendant had told him but with the clear and concise testimony of two state agents establishing four separate buys of substantial amounts of marijuana directly from defendant over a period of four months, and the existence of a potential adverse witness (Joe Gonzales); the foregoing supports his determination that it would be useless to explore the avenues of mistaken identity which would accomplish no more than develop further damaging evidence. That a defense of mistaken identity never existed and counsel knew this is borne out by the probation report[4] which reveals that had the agents been further questioned they would have established that they arrested defendant during the last transaction (count IV). Appellant fails to point to any "crucial" defense except to urge that his disclosure that "he needed the money and when the agents offered the money he was tempted," should have put his counsel on notice that there existed a defense of entrapment. This is wishful thinking. Nothing in the entire record is susceptible of even a suspicion that the four separate buys were the result of anything more than normal narcotic transactions involving a willing buyer and a willing seller (*People* v. *Braddock,* 41 Cal.2d 794, 802 [264 P.2d 521]; *People* v. *Woolwine,* 258 Cal.App.2d 385, 391 [65 Cal.Rptr. 672]; *People* v. *Barone,* 250 Cal.App.2d 776, 782 [58 Cal.Rptr. 783]; *People* v. *Harris,* 213 Cal.App.2d 365, 369 [28 Cal.Rptr. 766]) or that the criminal intent originated in the mind of anyone but defendant. (*People* v. *Sweeney,* 55 Cal.2d 27, 49 [9 Cal.Rptr. 793, 357 P.2d 1049];

---

[4]The probation report recites under "PRESENT OFFENSE" that on September 23, 1963 (count IV) the agents "went to the defendant's residence for the purpose of purchasing marijuana. They met on the porch and the defendant went inside of his house and returrned a short time later, at which time he handed one of the agents a small paper bag containing approximately one can of marijuana. At this point, the agent and his fellow agents identified themselves and placed the defendant under arrest." (Probation Report, p. 5.)

*People* v. *Benford,* 53 Cal.2d 1, 10 [345 P.2d 928] ; *People* v. *Terry,* 44 Cal.2d 371, 372-373 [282 P.2d 19].)

Nor has appellant supported his claim that he waived his right to a jury trial ''without the aid or advice of his counsel.'' We cannot assume, as does appellant, that merely because Mr. Foley was not attorney of record he was not conversant with the facts, or because Mr. Stanley was not personally present, the waivers and submission were given no thought or preparation or were accomplished without defendant's consent or prior consultation with him. Implicit in Mr. Foley's statement ''. . . I am appearing here for Robert Stanley in this matter and it is to be submitted . . .'' is the reality that Mr. Foley appeared not on his own behalf as defendant's attorney but solely as agent of and for Mr. Stanley and that Mr. Stanley, perhaps even defendant, had discussed with Mr. Foley the waivers and submission of the cause. That this disposition was the result of advice given to defendant by his counsel and made with defendant's prior knowledge and consent was confirmed by the conduct of both —when defendant personally told the court he knew he was entitled to a trial by jury of the case-in-chief and the priors, wished to waive the same and understood that he was doing so, and remained silent when Mr. Foley submitted the cause; and when, several months later, defendant and Mr. Stanley proceeded on the submission. Mr. Stanley was ''the manager of the lawsuit'' (*Wilson* v. *Gray,* 345 F.2d 282, 290), in control of the case and had the authority and duty to determine all questions of strategy and trial tactics, and it was within the scope of his authority and he had the right to submit the cause on the preliminary transcript; in doing so, there was no violation of defendant's constitutional and statutory right to be confronted with the witnesses against him. (*People* v. *Foster,* 67 Cal.2d 604, 606 [63 Cal.Rptr. 288, 432 P.2d 976].) Defense counsel had the opportunity to and did cross-examine the agents at the preliminary hearing, ''and any objection to the use of the preliminary hearing transcript at the trial was waived when defense counsel, in defendant's presence and without objection by him, joined in the stipulation regarding the use of that transcript. [Citations.]'' (*People* v. *Foster,* 67 Cal.2d 604, 606 [63 Cal.Rptr. 288, 432 P.2d 976] ; *People* v. *Cruz,* 244 Cal.App.2d 137, 140 [53 Cal.Rptr. 354].) This undoubtedly was the wisest course for counsel to take. From what he then knew of the circumstances, including what his own client had told him (*People* v. *Garrison,* 246

Cal.App.2d 343, 351 [54 Cal.Rptr. 731]), counsel was in a position to exercise his professional judgment, did so, and decided that the People's case as set up in the "cold" transcript would appear to the trial court much less damaging than if it were established anew at a trial in which all of the incirminating details would unfold (*People* v. *Comstock,* 147 Cal.App.2d 287, 299 [305 P.2d 228]) ; that the strategy may have been unrewarding is no ground for the conclusion that he was incompetent or lacked diligence in representing his client. (*People* v. *Robillard,* 55 Cal.2d 88, 96 [10 Cal.Rptr. 167, 358 P.2d 295, 83 A.L.R.2d 1086] ; *People* v. *Reeves,* 64 Cal.2d 766, 773 [51 Cal.Rptr. 691, 415 P.2d 35].) ▆ Ordinarily, the tactical decisions of trial counsel will not be reviewed with the hindsight of an appellate court, and except in rare cases, it should not attempt to second-guess him. (*People* v. *Brooks,* 64 Cal.2d 130, 140 [48 Cal.Rptr. 879, 410 P.2d 383].)

▆ Upon arraignment for judgment, the judge told counsel "this amounts to a sale of a considerable amount of marijuana. This isn't child's play, you know"; he responded, "I agree." Appellant says counsel should have kept quiet. Of course, the truth is that sale of a considerable amount of marijuana is not "child's play," the judge's statement reasonably called for comment, and counsel could hardly have expressed himself otherwise. Appellant also says counsel should have made a more impassioned plea for probation or hospitalization. Again, the truth is that defendant had placed himself in a most precarious situation consistent with neither probation, county jail sentence, nor hospitalization—he had admitted to the probation officer that he sold marijuana to the agents, the probation report showed a criminal narcotic record, including his last arrest while on bail for possession for sale of marijuana, and it was known to the judge that during trial he had "jumped" bail and fled to Mexico. In the face of this, the two narcotic priors, the probation officer's recommendation denying probation, the strong inculpatory evidence against his client and the judge's comment, about the only reasonable approach counsel could make was to acknowledge the seriousness of the offenses and advise the court that defendant "has faced up to his responsibilities." Except for the sake of repetition, what advantage would have resulted from again calling the court's attention to the fact that defendant "had no formal education" and had sold marijuana "in order to support his family?" These matters,

together with the fact that defendant had received a misdemeanor sentence on the 1951 conviction were set up in detail in the probation officer's report and letters from defendant, his wife and his minister. Moreover, nothing in the record justified any plea "that hospitalization might be in order"; defendant had never indicated he was either addicted or in need of or wanted medical treatment or hospitalization.

Appellant directs further criticism to the failure of his counsel to challenge the priors on the ground that there was no showing that in 1951 and 1952 he was represented by counsel or knowingly and intelligently waived his right thereto, and to request the district attorney to dismiss the priors, which were 15 (actually 13 and 12) years old, in the interest of justice. The lack of formal request in the record does not establish that trial counsel did not informally ask the prosecutor to dismiss the priors and was refused. Contrary to appellant's interpretation of the prosecutor's statement— "there is evidence that the priors have been admitted, your Honor"—that *he* (defendant) admitted the prior felony convictions, the record shows that the reference was to the priors having been admitted *in evidence,* for after considering Exhibits 5 and 6, the trial court specifically found the priors to be true. Proof of the 1951 prior conviction consisted of Exhibit 5 by reference, the superior court file in People v. Silva, No. 136814 (microfilm), and of the 1952 prior, Exhibit 6, abstract of judgment in the superior court case of People v. Silva, No. 142598, and certified copies of defendant's prison records. There is good reason for an absence of challenge to either prior by trial counsel for the fact is—as disclosed by our examination of the microfilm (Exh. 5) ordered by the trial judge and brought up by this court—that defendant at all stages of the 1951 criminal proceeding was represented by attorney W. W. Larsen; and the abstract of judgment (Exh. 6) of the 1952 proceeding shows on its face that again defendant was presented by Larsen. We assume that in the preparation of the cause, trial counsel learned from either the exhibits or his client that in both cases he had been represented by a private attorney.

■ Finally, appellant accuses trial counsel of abdicating his duty in failing to point out to the court under *People* v. *Pineda,* 238 Cal.App.2d 466 [47 Cal.Rptr. 879], that the 1951 prior conviction (§ 11500, Health & Saf. Code) was one for which he received a misdemeanor sentence of one year in the county jail in order to ameliorate his sentence and possibly to

obtain medical assistance. It should be noted that the trial of the within cause occurred in 1964 and *Pineda* was decided in November 1965. Further, a reading of *Pineda* suggests that the 1951 prior conviction was properly alleged as a felony under section 11504, Health and Safety Code, in which the term ''felony offense'' therein refers to an offense for which the law prescribes imprisonment in the state prison as either an alternative or the sole penalty, regardless of the sentence actually received. (238 Cal.App.2d at p. 470.) However, the fault in *Pineda* was the prejudice to appellant because he was charged with two prior felonies (on the first he received a misdemeanor sentence), he admitted two prior felonies and the trial judge, in sentencing appellant, referred to two prior felony convictions. The court said at page 471: ''If the judge had known that appellant's prior offenses had not actually been two felonies, but one felony and one misdemeanor, it may well be that he would have used the commitment procedure.'' The foregoing is hardly applicable in this case for (1) the judge knew that defendant had received a misdemeanor sentence on the 1951 felony conviction inasmuch as it was noted in the superior court file (Exh. 5) and specifically set up in the probation report, and we assume that he was familiar with the law; (2) there is nothing in the record to establish addiction or justification for use of the commitment procedure; (3) in sentencing defendant, the judge made no reference to two prior felony convictions and (4) concurrent, not consecutive sentences, were ordered on the four counts. At no time in the court below did defendant claim to be an addict, although he admitted being ''habituated'' to marijuana and that he had started ''to chip around with the use of heroin,'' but he said he did not believe he was addicted. His convictions were for four marijuana sales, not its use, and his subsequent arrest was for possession for sale of marijuana. He did not ask the probation officer for medical assistance nor in his letter to the court, which was one of contrition and remorse, did he request or suggest medical help or take refuge in a claim that it was because he was addicted that he committed the four offenses; according to his own statement his only motive for the sales was a pecuniary one. Defendant claimed to be in good health except for diabetes. ''No request for rehabilitation proceedings was interposed, nor are any facts suggested, other than the 1956 and current conviction, to suggest that appellant was addicted or in imminent danger of

becoming addicted to narcotics. On this state of the record, no purpose would be served in remanding the proceedings for resentencing, . . ." (*People* v. *Dabney,* 250 Cal.App.2d 933, 950 [59 Cal.Rptr. 243].)

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied October 21, 1968, and appellant's petition for a hearing by the Supreme Court was denied November 20, 1968.