[Crim. No. 7066.    First Dist., Div. One.    July 17, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. LEONARD
HARRIS, Defendant and Appellant.

·Charles H. Richards, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and John P. Oakes, Deputy Attorneys General, for Plaintiff and Respondent.

SIMS, J.—Defendant appeals from a judgment of conviction rendered on a jury verdict finding him guilty of the unlawful sale of narcotics. (Health & Saf. Code, § 11501.) He contends that he was denied due process of law because of an improperly suggestive identification procedure, and that the trial court incorrectly determined that he was ineligible for commitment as a narcotic addict. These contentions are examined and found to be without merit. The judgment must be affirmed.

*Facts*

In April and May of 1966, Edward Noriega, an agent with the Los Angeles office in the State Bureau of Narcotics Enforcement was temporarily assigned to the San Francisco office to work in an undercover capacity. He worked primarily in the Fillmore district during this period.

Noriega first saw defendant, Leonard Harris, at least a week prior to May 25, 1966. On that occasion he and a person named Mary went to an apartment in the 1300 block on Fillmore Street. Mary knocked on the door of the apartment and it was answered by defendant. She asked, "Have you got anything," or, "Can we get anything," and the defendant replied, "No, I haven't got anything right now." Mary and Noriega then departed.

Agent Noriega next saw the defendant at approximately 1:30 p.m. on May 25, 1966. Noriega was, at the time, walking south on the 900 block of Fillmore when he heard someone whistling. As he looked to his right he saw defendant on the other side of the street sitting in a stairway leading to an apartment. Noriega paid no attention to defendant and continued walking.

As the agent reached the corner he turned around and started back. He again "heard and observed" the defendant whistling. Defendant motioned him over, and he crossed the street and sat down next to defendant on the stairway.

Defendant asked the agent, "Are you looking," and Noriega indicated he was. Defendant said, "I have some bags." They discussed the matter and Noriega purchased two packages of heroin from defendant for $30. The agent then left the area.

George Ohlson testified that he was a field supervisor in the San Francisco office of the Bureau of Narcotics. On the day in question, following standard police procedure, he and Agent Walker followed Agent Noriega to the vicinity of McAllister and Fillmore Streets in San Francisco. They were in an automobile at the time.

Ohlson first observed defendant sitting on some steps as they drove south on Fillmore from McAllister Street. He then made a U-turn near the corner of Grove and Fillmore and parked headed in a northerly direction on the east side of Fillmore. At that time he observed Agent Noriega on the east side of Fillmore walking in a southerly direction. The undercover operator then turned and started walking in a northerly direction and the two agents started driving north on Fillmore. Ohlson subsequently observed Agent Noriega sitting on the steps with defendant.

Defendant testified that he was in an apartment in the 1300 block of Fillmore when Agent Noriega and a woman came to the door. He testified that the apartment belonged to a friend, that he had answered the door as a favor, and when addressed by the woman, responded by stating, "You must have the wrong apartment." Defendant indicated that he was frequently in this apartment house because his employer lived there.

He denied ever meeting Noriega again. He denied the incident ever took place. Defendant's testimony was impeached by showing that he had previously been convicted of a felony.

*Identification Evidence*

The undercover agent's testimony that he saw the defendant about a week prior to the alleged sale on May 25, 1966 was admitted without objection and was also corroborated by the testimony of the defendant who admitted that he had in fact confronted the agent and his female companion at an apartment door. On cross-examination the agent testified that he knew the defendant's name prior to the time he went to the apartment, and that when testifying he was sure the man who answered the door was defendant because that occasion was the first time he had seen him.

No objection was interposed to the agent's testimony that the defendant was the man he met and from whom he purchased the heroin a week later, and that he recognized the defendant as the person he had seen before. The agent testified that he did not arrest the defendant at the time because the arrest would have interfered with other pending investigations in the area. Less than four weeks later he identified a picture of the defendant in connection with his testimony before the grand jury which led to the indictment of the defendant. At the trial resulting in this appeal, November 7, 1967, he acknowledged that he had made other purchases of narcotics in the area, and had met and seen a lot of people, and that the only time he had seen the defendant since the sale was at a prior trial. (A mistrial followed a jury's inability to agree on January 4, 1967.)

After testifying that he had seen the defendant at the prior trial, the agent was cross-examined as follows: ''Q. How did you identify Mr. Harris? A. Through a photograph . . . Q. And where did you get this photograph? A. From Agent Ohlson. Q. Mr. Ohlson? A. Yes. Q. How did he—how did he present you with this photograph? A. Why he just showed it to me. Q. He just showed you a photograph? A. And asked me if this was the person I had seen. Q. And you said, 'Yes,' is that right? A. Yes. Q. Now, did you ever at any time ask Mr. Harris what his name was? A. No. I don't recall that I did. Q. Did he at any time give you his name? A. Not to my recollection. Q. Did you ever hear anybody calling him by any name, except in the courtroom? A. No, ma'am. Q. So the only way that you identified him was from a photograph handed you by Mr. Ohlson, who said, 'Is this the man?' A. Yes. Q. Is that correct? A. Yes. Q. You didn't choose it out of a group of photographs? A. Not to my recollection.''

The agent insisted that he was not mistaken in his identi-

fication of the defendant, and that the photograph depicted the person from whom he had purchased the heroin. No objection was ever interposed to any of this testimony. Although defendant's attorney made some inquiry concerning the whereabouts of the photograph, she made no demand for its production, nor did she seek to use the process of the court to obtain it. (Cf. *People* v. *Romero* (1969) 272 Cal.App.2d 39, 48 [77 Cal.Rptr. 175].)

Agent Ohlson testified without objection that he had seen the defendant and knew him by name before the incident in question, and that there was no doubt in his mind that the person sitting on the steps with Noriega was Harris. He was not interrogated concerning the photograph or its exhibition to Noriega. The defendant acknowledged that he had seen Ohlson before and knew him as a police officer, although not by name.

The defendant contends that his pretrial identification by means of the photograph was so unnecessarily suggestive and conducive to misidentification as to deny him due process of law. (See *Simmons* v. *United States* (1968) 390 U.S. 377, 382-386 [19 L.Ed.2d 1247, 1252-1255, 88 S.Ct. 969]; and cf. *Foster* v. *California* (1969) 394 U.S. 440 [22 L.Ed.2d 402, 89 S.Ct. 1127, 1128]; *Stovall* v. *Denno* (1967) 388 U.S. 293, 301-302 [18 L.Ed.2d 1199, 1206-1207, 87 S.Ct. 1967]; *Gilbert* v. *California* (1967) 388 U.S. 263, 269-274 [18 L.Ed.2d 1178, 1184-1187, 87 S.Ct. 1951]; and *United States* v. *Wade* (1967) 388 U.S. 218, 228-239 [18 L.Ed.2d 1149, 1158-1164, 87 S.Ct. 1926].)

■ ". . . no issue concerning the pretrial identification was raised in the trial court. To permit appellant to raise it now under circumstances where further examination of witnesses at trial might have satisfied any deficiency in the record is to allow him to gamble on the results of the trial while inviting error. Such tactics are not permitted. (Witkin, Cal. Criminal Procedure (1963) Reversible Error, § 747.)'" (*People* v. *Hughes* (1969) 271 Cal.App.2d 288, 291 [76 Cal. Rptr. 369]. Accord: *People* v. *Short* (1969) 269 Cal.App.2d 746, 749 [75 Cal.Rptr. 156]; *People* v. *Almengor* (1969) 268 Cal.App.2d 614, 617 [74 Cal.Rptr. 213]; *People.* v. *Armstrong* (1968) 268 Cal.App.2d 324, 326 [74 Cal.Rptr. 37]; and *People* v. *Rodriquez* (1968) 266 Cal.App.2d 766, 769-770 [72 Cal.Rptr. 310].)

■ The trial at which the defendant was convicted occurred almost five months after the decisions in the lineup

cases on which defendant now relies. Under these circumstances he cannot claim the prerogative of raising for the first time on appeal an unannounced constitutional privilege. (*People* v. *Armstrong, supra,* 268 Cal.App.2d at p. 326. Cf. *People* v. *Irvin* (1968) 264 Cal.App.2d 747, 759 [70 Cal. Rptr. 892].)

Defendant, in reliance upon *Brown* v. *Mississippi* (1936) 297 U.S. 278, 286-287 [80 L.Ed. 682, 687-688, 56 S.Ct. 461], seeks to avoid the failure to object below on the grounds that the error in admitting the identification evidence was of such magnitude that it constituted a violation of due process of law which vitiates his conviction despite the failure to object. (See also, Witkin, Cal. Evidence (2d ed. 1966) § 1308, par. (b), p. 1210; and Witkin, Cal. Criminal Procedure (1963) § 768, pp. 739-741.) The identification cases, however, uniformly indicate that the question of whether the identification procedures used in any particular case are so unnecessarily suggestive and conducive to irreparable mistaken identity as to be a denial of due process of law depends upon the totality of the circumstances. (See *Foster* v. *California, supra,* 394 U.S. 440, 442 [22 L.Ed.2d 402, 406, 89 S.Ct. 1127, 1128]; *Simmons* v. *United States, supra,* 390 U.S. 377, 383 [19 L.Ed.2d 1247, 1252-1253]; *Stovall* v. *Denno, supra,* 388 U.S. 293, 302 [18 L.Ed.2d 1199, 1207]; *People* v. *Osuna* (1969) 70 Cal.2d 759, 765 [76 Cal.Rptr. 462, 452 P.2d 678]; *People* v. *Smith* (1969) 273 Cal.App.2d 547, 555-556 [78 Cal.Rptr. 405]; *People* v. *Brown* (1969) 273 Cal.App. 2d 109, 111 [77 Cal.Rptr. 863]; *People* v. *Hughes, supra* 271 Cal.App.2d 288, 290-291; *People* v. *Burns* (1969) 270 Cal. App.2d 238, 245 [75 Cal.Rptr. 688]; *People* v. *Almengor, supra,* 268 Cal.App.2d 614, 617-618; *People* v. *Irvin, supra,* 264 Cal.App.2d 747, 758; and *People* v. *Smith* (1968) 263 Cal. App.2d 631, 637 [69 Cal.Rptr. 670].)

Under this rule the defendant cannot seek review without interposing an objection at the trial, because his failure to object has rendered it unnecessary to develop the circumstances from which a rational evaluation of the identification procedure can be made.

Turning to the instant case, there is no evidence to show under what circumstances the picture was shown to Noriega by Ohlson. The testimony that Noriega knew about Harris prior to the first confrontation suggests that the picture merely corroborated a relationship between the name and physical identity of a suspect whose physical identity was

well established in the mind of the agent. The record permits the conclusion that Noriega's identification testimony was independently predicated upon his two contacts with the defendant. His identification was corroborated by Ohlson, of whom defendant admitted having prior knowledge. The fact that only one picture of one subject was exhibited to Noriega does not compel the conclusion that the procedure was unnecessarily suggestive. (*People* v. *Brown, supra,* 273 Cal.App.2d 109, 111-112; and see *People* v. *Smith, supra,* 273 Cal.App.2d 547, 557, 558.

Defendant also complains that a picture identified by Noriega was used to establish the defendant's identity before the grand jury.[1] Although the question was leading it is obvious that the prosecutor and the agent, as the prosecuting witness, had determined the identity of the party to be charged prior to instituting the hearing before the grand jury. The practice of establishing the identity of the person charged by photograph as well as by name in the preliminary proceedings, so as to avoid any question of whether the person arrested is the person indicted, is to be commended. If this practice produces abuses which affect and taint the identification process they should be raised prior to appeal.

No cognizable error is found in the identification evidence.

*Failure to Commit*

Following the return of the verdict, the defendant was arraigned for judgment and made a motion for probation. At the hearing on this motion the court was apprised of the fact that sentencing proceedings were also pending against the defendant in another action in which he had plead guilty to burglary in the second degree (Pen. Code, § 459) committed July 19, 1966 (while he was at liberty on his own recognizance on the instant narcotics sale offense). A further charge of assault with a deadly weapon (Pen. Code, § 245) pending in that action was dismissed in the interests of justice on the motion of the district attorney. The probation reports in both actions were before the court and were read by the judge, who subscribed the report filed in this action which expressly

[1]The transcript of the proceedings leading to defendant's indictment reveals the following: ''Q. [Assistant District Attorney]: And, lastly, I will show you a photograph, which I will ask be marked Exhibit 13. Is this a photograph of Mr. Harris, the man with whom you dealt in this last transaction? A. [Mr. Noriega]: Yes, sir, it is. (The photograph of Leonard Harris was marked People's Exhibit No. 13.)''

incorporated the other by reference. (See *People* v. *Fabela* (1969) 272 Cal.App.2d 122, 127 [77 Cal.Rptr. 183].) The reports revealed a long record of criminality, including some arrests for offenses related to the use of narcotics, and a prior conviction of violation of section 245 of the Penal Code.[2]

The court indicated that it would deny probation and send the defendant to prison on the charge of sale of narcotics which is the subject of these proceedings. In fact it articulated such a sentence. The court then took up the other pending charges. After the dismissal of the undisposed-of assault charge, the defendant requested that he be given a county jail sentence on the burglary charge. Before the court could pass on this request, the defendant moved the court to suspend the proceedings so that a petition could be filed under section 3051 of the Welfare and Institutions Code to ascertain if he was addicted to narcotics or in imminent danger of such addiction. The court set aside such prior orders as it had made, and suspended proceedings to permit the filing of a petition. Sentencing on the undisposed-of burglary conviction was continued to await the result of the addiction proceedings.

Thereafter, a petition was filed; the defendant was served and arraigned on the petition and indicated his desire to be committed; and doctors were appointed to examine him. At the time, the prosecution indicated that it questioned the defendant's fitness for the treatment program for narcotic addicts.

Each of the appointed physicians reported that he found the defendant a narcotic addict as the term is defined in *People* v. *O'Neil* (1965) 62 Cal.2d 748 [44 Cal.Rptr. 320, 401 P.2d 928, 17 A.L.R.3d 806]. One doctor expressly recommended that he be sent to a rehabilitation center which specializes in narcotic addiction problems. At the hearing, pursuant to stipulation, the matter was submitted on the medical reports which had been filed. The deputy district attorney advised the court that the defendant was ineligible for the

---

[2] The defendant was charged in these proceedings with, and, on the morning of his first trial, admitted a prior conviction of attempted robbery (Pen. Code, §§ 211 and 664) on January 4, 1962. The probation report indicates that, although he was previously charged as indicated in the present indictment, he was found guilty of the felonious assault and admitted to probation. A certified copy of this conviction was used to impeach the defendant without objection from his counsel. The defendant testified that he plead to a lesser offense in the middle of a trial on the earlier charge, that he served 72 days as a condition of probation, and that he considered it a misdemeanor. The charge of the prior conviction contained in the current indictment was not included in the sentence or abstract of judgment but was dismissed.

rehabilitation center, and that the district attorney would not consent to his commitment. The court, throughout the argument on the merits of the petition, indicated that it would not make an order of commitment because it was convinced that the defendant would be returned from the treatment facility because of excessive criminality.[3] The court also indicated that it also considered that "the statute itself . . . indicates that a man is not eligible because of excessive criminality."

The court then denied the petition "For the reasons given." The court then found the defendant ineligible for probation, denied probation, and sentenced him to state prison for the term prescribed by law. A similar result ensued on the burglary charge with the sentence made concurrent to that for the narcotic offense.

Defendant recognizes that as a seller, the denial of his petition for treatment as a narcotic addict does not result in his imprisonment because of his status or condition in violation of guarantees against cruel and unusual punishment afforded by the Eighth and Fourteenth Amendments of the United States Constitution. (See *Robinson* v. *California* (1962) 370 U.S. 660, 666-667 [8 L.Ed.2d 758, 762-763, 82 S.Ct. 1417].) He relies on that case, however, as supporting the principle that a program for the treatment of addicts should be utilized in the interests of curbing the prohibited narcotic traffic. (See 370 U.S. at pp. 664-665 [8 L.Ed.2d at pp. 761-762].) The courts of this state have pointed out that the discretion vested in the trial court "should be exercised with a view to implementing, rather than possibly frustrating, the strong legislative policy disclosed by the enactments creating and governing the narcotic addict rehabilitation program." (*People* v. *Ortiz* (1964) 61 Cal.2d 249, 254-255 [37 Cal.Rptr. 891, 391 P.2d 163]. See also *People* v. *Wallace* (1963) 59 Cal.2d 548, 551-553 [30 Cal. Rptr. 449, 381 P.2d 185]; and *People* v. *Pineda* (1965) 238 Cal.App.2d 466, 473 [47 Cal.Rptr. 879].)

■ "Where the trial court has erroneously refused to exercise the discretion conferred by [Penal Code] section 6451 [now Welf. & Inst. Code, § 3051] because of a misapprehen-

---

[3]The court's views are evidenced by the following statement: "But, in any event, . . . having had past experience with the California Rehabilitation Center, and in view of Mr. Harris' long record, I am certain that it would be just an idle act to send him down there, and he undoubtedly would be rejected within the statutory period. I think it's sixty days. Or probably for other grounds of excessive criminality. I don't like to indulge in an idle act and have Mr. Harris back here again before this Court."

sion as to the defendant's eligibility for the program, the case will be remanded to permit the exercise of such discretion. [Citations.] . . .

"On the other hand, where the trial court has exercised its discretion and determined that the defendant does not constitute a fit subject for commitment under the section, its finding will not be upset if it is supported by the record. [Citations.]" (*People* v. *Jolke* (1966) 242 Cal.App.2d 132, 143 [51 Cal.Rptr. 171].)

■ Here the court undoubtedly manifested some confusion concerning the criteria to be applied and the manner in which it could exercise its discretion. The initial inquiry by the court in the criminal proceedings should be directed to the defendant's eligibility for the program as controlled by the provisions of section 3052 of the Welfare and Institutions Code.[4] If the defendant is presumably ineligible under those provisions, discretion should be exercised under the provisions of section 3051 which read as follows: "In any case to which Section 3052 applies, the judge may request the district attorney to investigate the facts relevant to the advisability of commitment pursuant to this section. In unusual cases, wherein the interest of justice would best be served, the judge may, with the concurrence of the district attorney and defendant, order commitment notwithstanding Section 3052. . . ." (See *People* v. *Armendariz* (1967) 253 Cal.App.2d 33, 34, fns. 1 and 3 [60 Cal.Rptr. 796]; *People* v. *Strickland* (1966) 243 Cal.App.2d 196, 198-199 [52 Cal.Rptr. 215]; and *People* v. *Pineda, supra,* 238 Cal.App.2d 466, 472.)

In this case the defendant having been previously convicted of a violation of section 245 of the Penal Code, and the district attorney adamantly having refused to concur in an order of commitment, the path to the rehabilitation facility was barred to the defendant regardless of how the judge might exercise his discretion under the provisions quoted above.

[4]Welfare and Institutions Code section 3052 provides as follows: "Sections 3050 and 3051 shall not apply to persons convicted of, or who have been previously convicted of murder, assault with intent to commit murder, attempt to commit murder, kidnaping, robbery, burglary in the first degree, mayhem, a violation of Section 245 or a violation of any provision of Chapter 1 (commencing with Section 261) of Title 9 of Part 1 of the Penal Code (but excepting subdivision 1 of Section 261) any felonies involving bodily harm or attempt to inflict bodily harm or any offense set forth in Article 1 (commencing with Section 11500) or 2 (commencing with Section 11530) of Chapter 5 of Division 10 of the Health and Safety Code, or in Article 4 (commencing with Section 11710) of Chapter 7 of such Division 10 for which the minimum term prescribed by law is more than five years in state prison."

Nevertheless, defendant insists that the judge's comments require a reversal. Under the procedure followed in this case the .same judge presided over the criminal proceedings and over the hearing on the petition under section 3051. His comments, during the hearing on the commitment petition, concerning the defendant's criminality were inappropriate. "The judge . . . presiding over the civil proceeding, had no jurisdiction to determine that defendant was ineligible for a narcotics commitment. Under Penal Code section 6451 [now Welf. & Inst. Code, § 3051] eligibility was determined in the criminal proceeding. In the civil proceeding the only issue was addiction." (*People* v. *Strickland, supra,* 243 Cal.App.2d 196, 199.) Nevertheless, the judge presiding in the criminal proceedings for good cause may reconsider and vacate the order suspending the criminal proceedings and ordering a civil hearing, either because the defendant is ineligible for the treatment program (*People* v. *Strickland, supra*), or because of new evidence which leaves that judge of the opinion .that "the defendant's record and probation report indicate such a pattern of criminality that he does not constitute a fit subject for commitment. . . ." (§ 3051, part, as applied in *People* v. *Jolke, supra,* 242 Cal.App.2d at p. 143.) .

In neither capacity did the judge actually express the opinion nor make an express finding that the defendant did not constitute a fit subject for commitment. (See § 3051, and *People* v. *Jolke, supra.*) His observation that "the statute . . . indicates that a man is not eligible because of excessive criminality" is inaccurate if accepted literally. Moreover, the remarks concerning the manner in which the Director of Corrections might exercise the discretion conferred by section 3053,[5] regardless of how well founded in prior experience, did not set forth a ground for denying the defendant the benefits of the treatment program, but infringed upon the discretion conferred upon the director. (See *People* v. *Coley* (1968) 257 Cal.App.2d 787, 793-796 [65 Cal.Rptr. 559] [disapproved on other grounds *People* v. *Delles* (1968) 69 Cal.2d 906-916 [73 Cal.Rptr. 389, 447 P.2d 629]] ; and *People* v. *Mar-*

[5]Welfare and Institutions Code section 3053 provides as follows: "If at any time after 60 days following receipt at the facility of a person committed pursuant to this article, the Director of Corrections concludes that the person, because of excessive criminality or for other relevant reason, is not a fit subject for confinement or treatment in such narcotic detention, treatment and rehabilitation facility, he shall return the person to the court in which the case originated for. such further proceedings on the criminal charges as that court may. deem warranted."

*quez* (1966) 245 Cal.App.2d 253, 256-257 [53 Cal.Rptr. 854].) This is not to say that the court may not consider such experiences in forming its own opinion, but it must nevertheless exercise its independent judgment if it is to deny treatment under the provisions of section 3051 which refer to the defendant's criminality.

It is unnecessary to consider whether the record as a whole permits the conclusion that the judge was in fact finding, as his own opinion, that the defendant's pattern of criminality was such as to render him unfit for treatment. Nor is it necessary to determine whether, because of the dual capacity in which he sat, such finding can be attributed to the criminal proceedings. The defendant in fact was ineligible under the provisions of section 3052. No waiver was secured, and the judge actually denied the defendant the commitment he sought. Under these circumstances it may be deemed that the judge in his capacity of presiding over the criminal proceedings was vacating the order which adjourned the criminal proceedings and provided for civil proceedings under section 3051 and was in fact making a determination that the defendant was not eligible for civil commitment. (See *People* v. *Strickland, supra,* 243 Cal.App.2d 196, 199.) He had no other course, and the errors upon which defendant seeks to rely cannot be deemed prejudicial.

The judgment is affirmed.

Molinari, P. J., and Elkington, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 4, 1969.