[No. F002673. Fifth Dist. Oct. 11, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
ALTON BREFORD DAVIS, Defendant and Appellant.

Counsel

Michael Thomas Woolford, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Robert D. Marshall and Eileen Ceranowski, Deputy Attorneys General, for Plaintiff and Respondent.

Opinion

ARDAIZ, J.*—

FACTS

In the instant case, appellant, Alton Davis, appeals from the judgment of the lower court denying his referral to the California Rehabilitation Center (CRC) based upon the lower court's finding that he was not in imminent danger of addiction. (Welf. & Inst. Code, § 3051.)[1] The facts before the trial court disclosed that appellant joined the United States Army at the age of 16. While in the Army, appellant was stationed in the Republic of South Korea where he was first exposed to and experienced narcotic drug usage. Appellant was exposed to heroin cigarettes at the age of 17 and, by the time of his discharge from the Army, he was addicted to the use of heroin.[2] As appellant attempted to support his heroin usage in civilian life, he entered a period between 1950 and 1973 of criminal activity related to maintaining his heroin habit through those years.

During the years between 1950 and 1973, appellant remained free of heroin usage only when incarcerated, sometimes withdrawing from heroin addiction with medical aid while in jail and other times withdrawing "cold turkey."

In 1974, following release from prison, until 1982, appellant was free from heroin usage (in a nonpenal setting) for the first time since 1947. Starting in 1974, appellant participated for three years in Tuum-Est, a drug rehabilitation program in Venice, California. There he gained self-cohe-

---

*Assigned by the Chairperson of the Judicial Council.

[1] All statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] The facts are taken from appellant's probation report and the psychiatric report in the instant case. The facts are uncontested by the parties.

siveness and purpose and work skills while remaining free of heroin usage. Following Tuum-Est, appellant felt confidence and self-respect.

Between 1975 and 1977, appellant worked as a youth counselor at a health care facility and as a veterans' counselor at the Veterans Administration Hospital in Los Angeles County.

In 1977, appellant moved to Modesto, California and worked between June 1977 and October 1982 as a supervising counsel at Head Rest, Inc., a CETA-funded reentry program for ex-addicts and ex-convicts. As a supervisor at Head Rest, appellant believed he had appreciable success, creating reentry programs and acting as group facilitator, dealing with ex-felons, drug addicts and recovering alcoholics. Because of cutbacks at the facility in which he worked, appellant's job was placed in jeopardy. Concerned that he was at a disadvantage in competing for the remaining jobs because of his limited education, appellant testified that he became demoralized and despondent and, as a result, returned to a pattern of substance abuse—first abuse of alcohol and then the use, by intravenous injection, of heroin. In August 1982, appellant began using heroin on a daily basis and would continue to do so up until the morning of March 7, 1983, when appellant once again found himself in court.

In October 1982, appellant had voluntarily sought aid in heroin detoxification from the Stanislaus County Department of Health methadone detoxification program due to his addiction to heroin. At that time, appellant reported using heroin on a daily basis for the preceding six months. Appellant was unable to complete this program due to his arrest in the current matter.

On March 31, 1983, appellant entered guilty pleas to the following separate charges: Penal Code section 666; Penal Code section 496, subdivision (1); Penal Code section 459, burglary in the second degree.

On April 22, 1983, appellant entered a guilty plea to Penal Code section 666. On May 11, 1983, the court made a finding that appellant was possibly addicted or in imminent danger of becoming addicted to narcotic drugs pursuant to the provisions of section 3051.[3] The district attorney was or-

---

[3]Section 3051 provides: "Upon conviction of a defendant for any crime in any superior court, or following revocation of probation previously granted, and upon imposition of sentence, if it appears to the judge that the defendant may be addicted or by reason of repeated use of narcotics may be in imminent danger of becoming addicted to narcotics the judge shall suspend the execution of the sentence and order the district attorney to file a petition for commitment of the defendant to the Director of Corrections for confinement in

dered to file a petition for commitment to determine whether appellant was a narcotics addict or in imminent danger of becoming one and, on May 12, 1983, the Stanislaus County District Attorney's office filed a petition in accordance with section 3051.

On May. 13, 1983, appellant was arraigned on the petition for commitment and the court appointed Dr. Gary Davis (no relation) as the physician to make a personal examination of appellant. The matter was set for hearing on June 3, 1983, and at that time the court continued the hearing to allow Dr. Davis to be present to testify.

On June 7, 1983, a further hearing was held on Dr. Davis' report. At the conclusion of Dr. Davis' testimony, counsel for appellant requested that the court appoint an additional physician based upon counsel's contention that Dr. Davis' testimony was equivocal and of little value because of his alleged inexperience. The court denied appellant's request to appoint a second physician and appellant was then called by his counsel to testify. At the conclusion of the testimony, the court made the finding that appellant was not

---

the narcotic detention, treatment, and rehabilitation facility unless, in the opinion of the judge, the defendant's record and probation report indicate such a pattern of criminality that he or she does not constitute a fit subject for commitment under this section.

"Upon the filing of such a petition, the court shall order the defendant to be examined by one physician; provided, that the examination may be waived by a defendant if the defendant has been examined in accordance with Section 1203.03 of the Penal Code and such examination encompassed whether defendant is addicted or is in imminent danger of addiction, and if the defendant is represented by counsel and competent to understand the effect of such waiver. At the request of the defendant, the court shall order the defendant to be examined by a second physician. At least one day before the time of the examination as fixed by the court order, a copy of the petition and order for examination shall be personally delivered to the defendant. A written report of the examination by the physician or physicians shall be delivered to the court, and if the report is to the effect that the person is not addicted nor in imminent danger of addiction, it shall so certify and return the defendant to the department of the superior court which directed the filing of the petition for the ordering of the execution of the sentence. Such court may, unless otherwise prohibited by law, modify such sentence or suspend the imposition of such sentence. If the report is to the effect that the defendant is addicted or is by reason of the repeated use of narcotics in imminent danger of addiction, further proceedings shall be conducted in compliance with Sections 3104, 3105, 3106, and 3107.

"If, after a hearing, the judge finds that the defendant is a narcotic addict, or is by reason of the repeated use of narcotics in imminent danger of becoming addicted to narcotics, the judge shall make an order committing such person to the custody of the Director of Corrections for confinement in the facility until such time as he or she is discharged pursuant to Article 5 (commencing with Section 3200), except as this chapter permits earlier discharge. If, upon the hearing, the judge shall find that the defendant is not a narcotic addict and is not in imminent danger of becoming addicted to narcotics, the judge shall so certify and return the defendant to the department of the superior court which directed the filing of the petition for the ordering of execution of sentence. Such court may, unless otherwise prohibited by law, modify such sentence or suspend the imposition of such sentence.

"If a person committed pursuant to this section is dissatisfied with the order of commitment, he or she may within 10 days after the making of such order file a written demand for a jury trial in compliance with Section 3108."

addicted to the use of narcotic drugs or substances and was not in imminent danger of becoming addicted. The court then ordered criminal proceedings resumed and the petition under section 3051 dismissed. Appellant was then sentenced to state prison for a total term of three years and eight months.

## DISCUSSION

Appellant argues that the trial court should have referred him to the CRC for drug treatment pursuant to section 3051. Appellant maintains that failure to refer him to the CRC on these facts was an abuse of discretion. Appellant further contends that the trial court should have appointed a second doctor at his request to determine if the first doctor was correct that he was "not in imminent danger of addiction." It is appellant's position that failure to appoint a second doctor at his request was an abuse of discretion and violative of appellant's due process rights.

Appellant acknowledges and respondent contends that *Salcido* v. *Superior Court* (1980) 112 Cal.App.3d 994 [169 Cal.Rptr. 597], Second District, Division Two, is directly in point on these facts. In *Salcido, supra,* the petitioner stood convicted of burglary. At his request, the superior court referred the petitioner for examination pursuant to section 3051 to determine if the petitioner was addicted or in imminent danger of becoming addicted to narcotics. The court appointed a qualified psychiatrist who reported to the court that the petitioner was not addicted within the meaning of section 3051. The petitioner then requested and received the appointment of a second psychiatrist who reached a conclusion that the petitioner fell within the provisions of section 3051. The district attorney then advised the court that he could not establish petitioner's addiction beyond a reasonable doubt and offered the opinion that the second doctor was neither credible nor reliable. The court dismissed the petition. The defendant appealed, alleging, among other contentions, that dismissal of the petition was contrary to legislative intent and a denial of due process.

The appellate court affirmed the trial court and found no due process violation. The *Salcido* court stated: ". . . the California Rehabilitation Center is not maintained as a place of refuge for anyone who, for various personal reasons, not the least of which may be the avoidance of prison confinement, desires to be admitted. In short, no one has a *right* to be declared an addict and, as such, be committed to the California Rehabilitation Center." (*Salcido* v. *Superior Court, supra,* 112 Cal.App.3d 994, 999, italics in original.)

The *Salcido* court confronted the argument that the second doctor's opinion should be considered in the context of the Legislature's amendment of

section 3051 to require one doctor instead of two.[4] "The amendment means to us that the Legislature now feels that the California Rehabilitation Center should not be available to those persons whose addiction cannot be discerned by at least one physician. As a protection for the individual, the Legislature has provided that a person may not be *involuntarily* committed on the basis of a single medical opinion that he is an addict without being given the opportunity to *refute* that opinion by an opinion of a second doctor that he is *not* addicted.

"That is the only logical interpretation of the amendment. It is totally illogical to assume that the Legislature had in mind a situation where a person would desire to have a doctor appointed to *corroborate* the opinion of the first doctor that he was addicted—that would be a redundancy. On the other hand, in line with the *Hendricks* rationale, it cannot be inferred that the Legislature intended to afford an opportunity for a person, through the appointment of a second doctor, to prove his own addiction when the first doctor's opinion was negative.

"If the court here committed any error it was in appointing the second doctor to examine the defendant after the first doctor had rendered a negative report." (*Salcido, supra,* at pp. 1000-1001, italics in original.)

*Salcido* relied substantially upon *Hendricks* v. *Superior Court* (1978) 81 Cal.App.3d 950 [146 Cal.Rptr. 798] which confronted the issue of calling additional doctors under section 3051 when two doctors appointed under the predecessor to the present section 3051 found the petitioner not addicted. We are not confronted with a request to appoint or call additional doctors after the second doctor referred to in section 3051 has been called at the defendant's request. We, therefore, do not find the factual situation in *Hendricks, supra,* or its conclusion applicable to the instant case.

In our view, *Salcido* directed its reasoning toward the conclusion that a defendant confronted with a CRC commitment only has an interest in freedom since he is involuntarily committed. *Salcido* relies upon *People* v. *Thomas* (1977) 19 Cal.3d 630 [139 Cal.Rptr. 594, 566 P.2d 228] which provides that an involuntary CRC commitment requires substantial due process protections.

Focusing upon the term "involuntary commitment," the *Salcido* court essentially reasons—if it is an involuntary commitment then one has no

---

[4]The 1979 amendment to section 3051 authorized examination by "one" instead of "two" physicians in the first sentence of the second paragraph of section 3051 and added the second sentence in the second paragraph authorizing examination by a second physician at the defendant's request.

interest in aiding the commitment process. " 'It makes no more sense to say, in the context of the involuntary commitment procedure, that the subject of a section 3051 petition was denied due process because the petition was dismissed without his having had a chance to prove his own addiction, than it would to say that a criminal defendant was denied due process by dismissal of pending charges at the conclusion of the preliminary hearing without allowing him an opportunity to prove himself guilty . . . .' " (*Salcido v. Superior Court, supra,* 112 Cal.App.3d at p. 1000, quoting *Hendricks v. Superior Court, supra,* 81 Cal.App.3d 950, 954-955.)

Therefore, the *Salcido* court determined that an individual has no interest in CRC other than staying out. Thus, the *Salcido* court determined that a defendant's due process interests were sufficiently protected by all the rights granted him to protect him against an involuntary commitment and no due process rights existed or were necessary to help him get into CRC. This analysis assumes no interest with respect to CRC other than freedom from incarceration.

█ The due process clause of both the state and federal Constitutions mandates that no person may be deprived of life, liberty or property without due process of law. Deprivation of freedom obviously falls within the prohibitions against deprivation of liberty expressed in the state and federal Constitutions.[5]

"In interpreting the federal clause, the Supreme Court has held that a prisoner may derive a due process liberty interest from either the Constitution or state law. [Citation.] When the asserted interest is derived exclusively from state law, it will be recognized as within the scope of due process liberty if the state statute protects the interest by permitting its forfeiture only on the happening of specified conditions." (*People v. Ramirez* (1979) 25 Cal.3d 260, 265 [158 Cal.Rptr. 316, 599 P.2d 622].)

The state has taken a more expansive approach to procedural due process with respect to an individual's statutory interest. █ "We therefore hold that the due process safeguards required for protection of an individual's statutory interests must be analyzed in the context of the principle that freedom from arbitrary adjudicative procedures is a substantive element of one's liberty. [Citation.] This approach presumes that when an individual is subjected to deprivatory governmental action, he always has a due process liberty interest both in fair and unprejudiced decision-making and in being treated with respect and dignity. Accordingly, it places front and center the

---

[5]California Constitution, article I, section 7, subdivision (a), provides: "A person may not be deprived of life, liberty, or property without due process of law . . . ."

issue of critical concern, i.e., what procedural protections are warranted in light of governmental and private interests." (*Id.*, at p. 268.)

■ *Ramirez,* therefore, provides that the due process relief that is available depends upon the interests involved balanced against the procedures necessary to protect those interests. ". . . identification of the dictates of due process generally requires consideration of (1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, (3) the dignitary interest of informing individuals of the nature, grounds and consequences of the action and in enabling them to present their side of the story before a responsible governmental official, and (4) the governmental interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." (*Id.*, at p. 269.)

Therefore, an analysis of section 3051 requires a determination of what the private and governmental interests are. In this context, appellant argues that he has an interest in treatment that was not given sufficient protection in the instant proceeding and respondent argues that *Salcido, supra,* provides only an interest in freedom from involuntary commitment and, therefore, no right to call a second doctor to prove addiction.

■ The threshold question thus raised in the instant case is: Does appellant have a protected private interest in treatment for purposes of section 3051 when the issue in the hearing is the determination of whether appellant is in fact addicted or in imminent danger of addiction? If appellant has a private interest in treatment, then he is entitled to consideration of the balance of the criteria set forth in *People* v. *Ramirez, supra,* 25 Cal.3d 260 concerning his due process rights.

The courts have implicitly recognized a defendant's interest in section 3051 referral for examination. (See *People* v. *Ortiz* (1964) 61 Cal.2d 249, 254-255 [37 Cal.Rptr. 891, 391 P.2d 163]; *People* v. *Ibarra* (1963) 60 Cal.2d 460, 467 [34 Cal.Rptr. 863, 386 P.2d 487], overruled on other grounds in *People* v. *Pope* (1979) 23 Cal.3d 412 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1]; *People* v. *Wallace* (1963) 59 Cal.2d 548, 552-553 [30 Cal.Rptr. 449, 381 P.2d 185]; *People* v. *Madden* (1979) 98 Cal.App.3d 249, 260-262 [159 Cal.Rptr. 381]; *People* v. *Jolke* (1966) 242 Cal.App.2d 132, 143 [51 Cal.Rptr. 171]; *People* v. *Pineda* (1965) 238 Cal.App.2d 466, 472-473 [47 Cal.Rptr. 879]; *People* v. *Bradford* (1963) 212 Cal.App.2d 403, 405 [27 Cal.Rptr. 905].) In *People* v. *Leonard* (1972) 25 Cal.App.3d 1131 [102 Cal.Rptr. 435], the defendant appealed from a

denial of referral to CRC. In reversing for abuse of discretion, the court noted that the defendant might have to serve more time than he would if not committed to CRC. "In a larger sense, however, the appeal involves considerations which may be of ultimate benefit to the defendant. If he needs treatment for his addiction to narcotics, and qualifies for the rehabilitation program, *he is entitled to its benefits*. At the very least, he is entitled to a hearing in accordance with the statutory requirements and a determination of his eligibliity [*sic*] based upon proper considerations. In our view, he got neither in the trial court." (*Id.*, at p. 1135, italics added.)

Each of the preceding cases involves an appeal by the defendant for refusal to initiate or improperly initiating commitment proceedings. It is evident that if a defendant had *no interest* in being sent to CRC other than an interest in freedom, then he would have no basis or reason to complain when he is not sent. That defendants complain upon rejection from referral and that those complaints have given rise to numerous cases providing guidelines for the court *in favor of the defendants' referral* is evident in the volumes those cases fill. ". . . the discretion thereby vested in the court should be exercised with a view to implementing, rather than possibly frustrating, the strong legislative policy disclosed by the enactments creating and governing the narcotic addict rehabilitation program. That policy, responsive to the current medico-social approach to the issue of drug addiction [citation], favors inquiry into the addictive status of *all* criminal defendants whose record indicates the presence of an addiction problem." (*People* v. *Ortiz, supra,* 61 Cal.2d 249, 254-255.)

In *People* v. *Ramirez, supra,* the Supreme Court addressed the issue of a defendant's rejection from the CRC and held: "It is true, as appellant argues, that a patient-inmate has an important interest in receiving treatment at the CRC for his narcotics addiction." (*People* v. *Ramirez, supra,* 25 Cal.3d 260, 272.)

We therefore find that appellant has an interest in the opportunity for narcotics treatment. While we recognize an interest in treatment, we note that this does not in any way diminish the defendant's objections to or protection from confinement in the first instance. What we recognize is that the due process protections of section 3051 address both the interest in freedom from confinement and the interest in the opportunity for treatment. Our decision finds that, aside from the individual's liberty interest in freedom from confinement, the addict has, because of the program established by the state, an interest in the opportunity for treatment as recognized in *Ramirez* and implicit in the numerous cases cited concerning abuse of discretion in refusing referral.

Having recognized appellant's interest in the opportunity for treatment, we must now address the balance of the due process criteria enumerated in *Ramirez* to determine if appellant has a right to call the second physician provided for in section 3051 in order to prove his addiction.

The second prong of *Ramirez* requires a determination of the risk of an erroneous deprivation of the individual's "private interest" through the procedures used "and the probable value, if any, of additional or substitute procedural safeguards." (*People* v. *Ramirez, supra,* 25 Cal.3d at p. 269.)

In the instant case, the basic principle is that "freedom from arbitrary adjudicative procedures is a substantive element of one's liberty." (*Id.,* at p. 268.) Implicit in this concept is that the court will acquire sufficient information to make a reasoned decision that reflects an exercise of discretion. Weight must be given to the "important due process value of promoting accuracy and reasonable predictability in governmental decision making when individuals are subject to deprivatory action." (*Id.,* at p. 267.)

As has been expressed by the Fifth Circuit Court of Appeals, "The public has the right to expect its officers to observe prescribed standards and to make adjudications on the basis of merit." (*Hornsby* v. *Allen* (5th Cir. 1964) 326 F.2d 605, 610.)

Recognizing appellant's interest in treatment, we fail to understand how a refusal to allow the opinion of a second qualified physician is consistent with seeking a determination of the question of a defendant's addiction. In fact, in our view, the statute specifically addresses this point.

"Upon the filing of such a petition [under § 3051], the court shall order the defendant to be examined by one physician; . . . *At the request of the defendant, the court shall order the defendant to be examined by a second physician.*" (§ 3051, italics added.)

A realistic interpretation of the pertinent portion of section 3051 just referred to is that the defendant's interest in freedom from involuntary commitment is addressed by allowing him to call for a second physician if the first one concludes he is an addict or is in imminent danger of addiction. The defendant's interest in treatment is addressed by *his* ability to call for a second physician to address the issue of addiction if the first report is negative or inconclusive.

In our view, the logical interpretation of legislative intent in reducing the mandatory appointment of two doctors to the appointment of one doctor with a defendant's right to a second is based on economics. If the defendant is satisfied with the report of the first physician and his or her testimony, what is the point of spending the money for a second court-appointed physician? In the instant case, the defendant's interests under section 3051 are protected by the procedure set forth in the statute allowing him access to the opinion of a second doctor.[6] By allowing the testimony of a second physician, there can only be more confidence that the issue of the defendant's addiction has been thoroughly examined and a sound result reached on the merits.

*Ramirez* mandates by its third requirement that the dignitary interests of individuals in being informed "of the nature, grounds and consequences of the action and in enabling them to present their side of the story before a responsible governmental official" be addressed. (*People v. Ramirez, supra,* 25 Cal.3d at p. 269.) " 'For government to dispose of a person's significant interests without offering him a chance to be heard is to risk treating him as a nonperson, an object, rather than a respected, participating citizen.' [Citation.] Thus, even in cases in which the decision-making procedure will not alter the outcome of governmental action, due process may nevertheless require that certain procedural protections be granted the individual in order to protect important dignitary values, or, in other words, 'to insure that the method of interaction itself is fair in terms of what are perceived as minimum standards of political accountability—of modes of interaction which express a collective judgment that human beings are important in their own right, and that they must be treated with understanding, respect, and even compassion.' " (*Id.,* at pp. 267-268, quoting Saphire, *Specifying Due Process Values* (1978) 127 U.Pa.L.Rev. 159.)

We find it difficult to conceive how a defendant's interests can be disposed of at a section 3051 hearing without giving him an opportunity to call a second physician if the defendant wishes. How can the defendant's right to present his side be protected by preventing him from asking for a second opinion in the face of a single opinion that affects him? Therefore, we find that the dignitary interests of the defendant require that he be allowed to call a second physician to test the opinion of the first doctor if the defendant wishes to challenge that opinion. We note that the provisions of section

---

[6]We are not called upon, nor do we decide whether a defendant could or should be allowed to call additional physicians if he does not agree with the opinions of the doctor called by the court and the doctor called at the defendant's request.

3051 are in keeping with this view in that provision is made for the defendant to call a second physician.

The fourth prong of *Ramirez* is directed to the governmental interest, including the function involved and the fiscal and administrative burdens that the additional substitute procedural requirements would entail. The governmental interest pursuant to section 3051 is in treatment for addicts—this is the purpose of the chapter concerning narcotics addicts. "It is the intent of the Legislature that persons addicted to narcotics, or who by reason of repeated use of narcotics are in imminent danger of becoming addicted, shall be treated for such condition and its underlying causes, and that such treatment shall be carried out for nonpunitive purposes not only for the protection of the addict, or persons in imminent danger of addiction, against himself, but also for the prevention of contamination of others and the protection of the public." (§ 3000.)

Thus, the express intent of the Legislature is for treatment of narcotics addicts and those in imminent danger of addiction except where ". . . in the opinion of the judge, the defendant's record and probation report indicate such a pattern of criminality that he or she does not constitute a fit subject for commitment under this section." (§ 3051.)[7]

We therefore conclude that the express governmental interest in treatment is not served by denial of a second physician at the defendant's request to prove he is addicted. We further find that allowing the defendant to call a second physician at his request to prove or disprove his addiction is consistent with the governmental interests involved and creates few, if any, additional administrative burdens.

---

[7]Section 3052 provides: "(a) Sections 3050 and 3051 shall not apply to any of the following:

"(1) Persons convicted of any offense for which the provisions of Section 667.6 of the Penal Code apply, or any offense described in Chapter 1 (commencing with Section 450) of Title 13 of Part 1 of such code; or any person convicted of committing or attempting to commit any violent felony as defined in subdivision (c) of Section 667.5 of the Penal Code.

"(2) Persons whose sentence is enhanced pursuant to subdivision (b) of Section 12022 of the Penal Code, or Section 12022.3, 12022.5, 12022.6, 12022.7, or 12022.8 of such code; or persons whose sentence is subject to the provisions of Section 3046 of the Penal Code; or persons whose conviction results in a sentence which, in the aggregate, exclusive of any credit that may be earned pursuant to Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 of the Penal Code, exceeds six years' imprisonment in state prison; or persons found to come under the provisions of Section 1203.06 of the Penal Code.

"(b) Notwithstanding the provisions of subdivision (a) of this section or Section 3053, the fact a person comes within Section 1203.07 of the Penal Code does not mean that he or she may not be committed and treated."

In applying this analysis to the facts herein, the trial court found the testimony of Dr. Davis persuasive that appellant was neither addicted nor in imminent danger of addiction at the time of the hearing. The defense contended that the testimony of Dr. Davis was equivocal on the issue of imminent danger of addiction and requested that another doctor be appointed. The court rejected defense counsel's request to call a second physician.[8]

■ "Where a court has made its ruling, counsel must not only submit thereto but it is his duty to accept it, and he is not required to pursue the issue." (*People* v. *Diaz* (1951) 105 Cal.App.2d 690, 696 [234 P.2d 300].) At this point, defense counsel called his client to the stand and, at the conclusion of his testimony, the court found that the defendant was neither addicted nor in imminent danger of addiction. It is uncontested that the defendant was not excludable from CRC consideration because of excessive criminality.

■ Therefore, based upon our analysis of *Ramirez,* we find that the failure to call a second qualified physician at the request of the defendant was error. Since we find that a determination of the defendant's alleged addiction under section 3051 cannot be made until the defendant has had an opportunity to call another doctor, we do not find it necessary in the instant case to address appellant's contentions of an abuse of discretion in his rejection from CRC by the lower court.

---

[8]"THE COURT: All right, Dr. Davis. You may step down. And you're excused if you wish to leave.

"Mr. Trimble?

"MR. TRIMBLE: What I would suggest we do, your Honor, is to start over on this particular aspect of the case.

"I have nothing against the doctor, Dr. Davis. But it would appear that his expertise in this particular area of specialty is somewhat less than limited. And I would feel more comfortable with the situation if perhaps some other doctor more familiar with this type of problem is appointed.

"THE COURT: Well, you didn't seek to go into Dr. Davis' background extensively. I've seen his curriculum vitae and his background in the field of psychiatry. And practice in that area is certainly sufficient and greater apparently than many of the physicians that we do appoint.

"The fact that he's had no background in drug addiction in and of itself doesn't indicate to me that he's not qualified to make the judgments that he's made here. Everybody has to have a first time, I suppose. The fact that this is the doctor's first time on the witness stand in this type of situation doesn't impress me that we need to start over.

"I see no need particularly to shop for any particular opinion. And that would appear to be what we're talking about now.

"MR. TRIMBLE: No, sir. That's not what I'm talking about. I'm quite concerned that the Court has this type of individual without the expertise appointed, your Honor.

"THE COURT: Well, I can tell you now some of the people we've used in the past, we are not stepping backward."

The decision herein is ordered reversed and remanded for further proceedings consistent with this opinion.

Hanson (P. D.), Acting P. J., and Andreen, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied January 16, 1985.