[Crim. No. 7740.    In Bank.    April 16, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. ROBERT ORTIZ, Defendant and Appellant.

Leonard H. McBride for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Paul N. Wenger, Deputy Attorney General, for Plaintiff and Respondent.

SCHAUER, J.—Defendant appeals from a judgment of conviction of selling heroin (Health & Saf. Code, § 11501). The trial court denied his motion for new trial and application for probation, and sentenced him to state prison for the term prescribed by law.

The sole contention on appeal is that the trial court erroneously ruled that because of the nature of defendant's offense (sale of heroin) he was ineligible to be considered for the narcotic addict rehabilitation program (Pen. Code, pt. III, tit. 7, chs. 11 and 12), and that the court therefore failed to exercise the discretion vested in it by Penal Code section 6451[1] to determine whether proceedings should be instituted

[1]At the time of the subject hearing section 6451 provided in relevant part that "Upon conviction of a defendant for any crime in any superior court, if the judge ascertains that the defendant is addicted or by reason of repeated use of narcotics is in imminent danger of becoming addicted to narcotics he shall adjourn the proceedings or suspend the

to commit defendant under that program. We have concluded that the record supports this contention and hence that the judgment should be reversed and the cause remanded for the exercise of such discretion by the trial court.

The People's principal witness was an undercover agent who testified that defendant made a sale of heroin to him some eight months prior to defendant's arrest. Defendant denied the sale, his defense being that it was a case of mistaken identity. The first jury empanelled to try the issue failed to agree, but the second jury returned a verdict of guilty. There is no contention that the evidence is insufficient to sustain the verdict.

After denying probation the court said to defendant: ''Of course, Mr. Ortiz, you stand before the Court today ... convicted of the sale of heroin.

''Now, I have not only read the report of the Probation Officer but I also read the letters that were written here on your behalf, and it is unfortunate, Mr. Ortiz, that I find you here in the position that you stand today.

''You are apparently very well thought of by a lot of people and your record of employment is—well, I might even say outstanding. You are a carpet layer, apparently pretty expert in your job. Everyone that had any dealings to do with you in the area of the work that you are engaged in, that is, carpet laying, also spoke very highly of your ability and industry in your work.

''You are a fine-looking boy, or young man, I should say, and you have got a family, and this situation that the Court finds himself in today is unusually distasteful because of the fact that you appear to be a little bit different than the usual type of young man that we find here that is engaged in the selling and possession and the use of narcotics.

''I feel really bad about this, I really do. *I don't have anything that I can do except one*, Mr. Ortiz. We cannot tolerate the sale or use of narcotics, and particularly can we not tolerate the sale, just can't do it.'' (Italics added.) The court then sentenced defendant to state prison, adding: ''I know it doesn't help, Mr. Ortiz, I don't know whether you believe me or not, but I feel very badly about having to do this, *but I have no alternative at all.*'' (Italics added.)

imposition of the sentence and direct the sheriff to file a petition to ascertain if such a person is addicted to narcotics or in imminent danger thereof unless in the opinion of the judge the defendant's record and probation report indicate such a pattern of criminality that he does not constitute a fit subject for commitment under this section. ...''

At this juncture the issue of defendant's eligibility for the narcotic addict rehabilitation program was raised and summarily disposed of in the following manner:

"MR. VERRY [counsel for defendant]: I don't suppose that he would be eligible, under the present circumstances, to go to the hospital?

"THE COURT: *No. He is not here for being an addict.* I notice that he had some marks on his arm at one time.

"MR. VERRY: Yes.

"THE COURT: And, so, apparently he is familiar with this type of thing and whether he is an addict or not, there isn't sufficient showing here.

"In any event, *in view of the sale there isn't anything I can do except send him to the State Penitentiary, ...*" (Italics added.)

From the emphasized language it appears that the trial court believed and ruled that because defendant was convicted of selling an illegal narcotic he was as a matter of law ineligible to be considered for commitment under Penal Code section 6451 (*ante,* fn. 1) and hence that the court had "no alternative at all" but to impose a prison sentence. The court presumably acted on the view that defendant's case fell within the terms of Penal Code section 6452, which declares ineligible for the rehabilitation program defendants "convicted of, or who have been previously convicted of" certain specified crimes of violence or "any offense set forth in Article 1 . . . of Chapter 5 of Division 10 of the Health and Safety Code [i.e., including § 11501] . . . for which the minimum term prescribed by law is *more than* five years in state prison." (Italics added.)

■ In the case at bench, however, defendant has suffered no previous conviction carrying a minimum term of "more than five years"; and his present conviction (with no prior "felony offenses" charged) carries an indeterminate sentence of "five years to life" and hence a minimum of exactly "five years."[2] As we held in similar circumstances, "five years" is not "more than five years." (*People* v. *Wallace* (1963) 59 Cal.2d 548, 551-553 [3] [30 Cal.Rptr. 449, 381 P.2d 185]; accord, *People* v. *Ibarra* (1963) 60 Cal.2d 460, 467 [5] [34 Cal.Rptr. 863, 386 P.2d 487]; *People* v. *Bradford* (1963) 212 Cal.App.2d 403, 405 [1] [28 Cal.Rptr. 115].) It

---

[2]Although not significant here the five-year minimum could, with parole, work out to entail as little as three years within the prison walls. (Health & Saf. Code, § 11501.)

follows that defendant was eligible for consideration under Penal Code section 6451 and the court erred in ruling that "in view of the sale there isn't anything I can do except send him to the State Penitentiary. ..."

The Attorney General argues nevertheless that the court did exercise its discretion and "impliedly ascertained" that defendant was not an addict or in imminent danger of becoming addicted. This interpretation of the record is assertedly based on (1) the fact that there was no testimony *at the trial* establishing defendant's addiction and (2) the court's remark at the postconviction hearing (quoted hereinabove) that "whether he is an addict or not, there isn't sufficient showing here." The Attorney General apparently seeks to invoke the rule that "where a judge's statements as a whole disclose a correct concept of the law and its application, no secondary remarks should be deemed to have impeached his determination." (*People* v. *Cartier* (1960) 54 Cal.2d 300, 313 [9] [5 Cal.Rptr. 573, 353 P.2d 53].) That rule is inapplicable here, however, for as just shown the "judge's statements as a whole" disclose an incorrect rather than a correct concept of the relevant law, embodied not merely in "secondary remarks" but in his basic ruling that he had no discretion except to impose a prison sentence because of the nature of defendant's offense.

Moreover, in the context in which it was made the quoted remark of the court (*"whether he is an addict or not,* there isn't sufficient showing here") implies a further misunderstanding of the purpose and operation of the law relating to the commitment process. Contrary to the Attorney General's assertion, the record before the trial court contained substantial indications that this defendant had an addiction problem. Of course defendant denied acquaintance with heroin when asked about the matter during trial, for his sole defense was a plea of innocence and mistaken identity. But in the course of the probation investigation a very different picture emerged. The probation report contains, *inter alia*, the following information: "A report of the Fullerton Police Department indicates that at 7:00 p.m. on February 21, 1962 [i.e., two months prior to defendant's arrest on the present charge], the Defendant was questioned in the alley to the rear of his home, and it was observed that he had several marks on his arms which appeared to have been left by a hypodermic needle. He agreed to submit to a Nalline test, which was administered at the Orange County Sheriff's

Office. The results of it were positive, indicating that Mr. Ortiz was under the influence of heroin at that time. He advised us that the police counted twelve marks on his arm, which were alleged to have been left by injections of heroin. The Defendant further said that he had been depressed during the period of approximately one month prior to this arrest, as the result of a separation from his wife, and he had begun to use some heroin.''

The probation report also recites that ''The charge of narcotics addiction on February 21, 1962, has not yet been adjudicated. The Defendant advised us that the matter was continued by the Anaheim-Fullerton Municipal Court to September 7, 1962, pending the outcome of the Superior Court case [i.e., the case at bench].'' Thus it appears on the face of the probation report that defendant was not only a suspected narcotics user but indeed was under a pending charge of addiction (former Health & Saf. Code, § 11721) at the very time the court in the present case was called upon to consider him for the narcotic addict rehabilitation program. The court was aware of this background, for at the start of the subject hearing it directed the record to show that ''the Court has read and considered'' the just quoted report. Reflecting this fact the court stated, in response to defense counsel's inquiry concerning possible commitment, that ''I notice [presumably in the probation report] that he had some marks on his arm at one time,'' and commented ''And, so, apparently he is familiar with this type of thing. ...'' Yet the ruling now challenged implies a belief that even if defendant was in fact addicted to the use of narcotics, the court could not consider him for the rehabilitation program because ''He is not here for being an addict''—i.e., because he did not stand before the court convicted of the ''crime'' of addiction. Of course there is no such restriction in the law, for by its express language section 6451 becomes relevant ''Upon conviction of a defendant for *any* crime in any superior court'' (italics added).

It is true that section 6451 does not set forth any formalities which the trial court must follow in making its preliminary determination as to whether the defendant is addicted to narcotics or in imminent danger thereof and hence requires the institution of commitment proceedings, nor any specific criteria which the court must consider in so ruling. But the discretion thereby vested in the court should be exercised with a view to implementing, rather than pos-

sibly frustrating, the strong legislative policy disclosed by the enactments creating and governing the narcotic addict rehabilitation program. That policy, responsive to the current medico-social approach to the issue of drug addiction (see *In re De La O* (1963) 59 Cal.2d 128, 140-141 [6], 143 [8], 144-145 [10], 148 [12]-149 [13] [28 Cal.Rptr. 489, 378 P.2d 793]), favors inquiry into the addictive status of *all* criminal defendants whose record indicates the presence of an addiction problem.

Upon remand, of course, the proceedings are to be conducted under the law as it shall then be in effect, rather than as it stood at the time of the first hearing. In this connection we observe that since the date of that hearing the Legislature has emphasized the basic remedial purpose of the narcotic addict rehabilitation program by an express declaration of such policy (Pen. Code, § 6399, added Stats. 1963, ch. 1706, § 1) and by various amendments to the statutory scheme, including the following changes in section 6451: as originally enacted, section 6451 required an inquiry into the defendant's addictive status "if the judge *ascertains* that the defendant *is* addicted or by reason of repeated use of narcotics *is* in imminent danger of becoming addicted to narcotics" (italics added); as amended (Stats. 1963, ch. 1706, § 8), section 6451 requires such inquiry "if it appears to" the judge that the defendant "may be" addicted or "may be" in imminent danger thereof.[3] Furthermore the formerly absolute ineligibility for the program of defendants convicted of a crime listed in section 6452 is now qualified by the following provision of amended section 6451 (added also to § 6450): "In any case to which section 6452 applies, the judge may request the district attorney to investigate the facts relevant to the advisability of commitment pursuant to this section. In unusual cases, wherein the interest of justice would best be served, the judge may, with the concurrence of the district attorney and defendant, order commitment notwithstanding section 6452."

Accordingly, to give proper effect to both the express language and the underlying purpose of the narcotic addict commitment statutes, the cause must be remanded not for a new trial on the issue of guilt but in order that the court

[3] The quoted language of section 6451 is thus brought into line with that of section 6450, dealing with certification to the superior court (for inquiry into addictive status) of defendants convicted in a municipal or justice court.

may have the opportunity to exercise the discretion vested in it by section 6451. (See *People* v. *Wallace* (1963) *supra*, 59 Cal.2d 548, 553 [3].)

The judgment, insofar as it decrees the sentence as entered, is reversed and the cause is remanded for further proceedings in conformity with this opinion.

Gibson, C. J., Traynor, J., McComb, J., Peters, J., Tobriner, J., and Peek, J., concurred.