IRION, J., Concurring and Dissenting.
I concur in the majority’s decision to affirm Jeanette Sonja Tessman’s residential burglary conviction, but I dissent from their decision also to affirm her commercial burglary conviction. As I read the record and the applicable law, reversal of the commercial burglary conviction is required because the trial court might have found Tessman guilty based upon a legally incorrect theory.
*1305 I agree with the majority that the trial court’s statement Tessman was guilty of commercial burglary because she knew or reasonably should have known the necklace she sold at the pawnshop was stolen, was incorrect insofar as it assumed constructive knowledge was sufficient for conviction. The offense of selling stolen property, upon which the commercial burglary charge was predicated, requires actual knowledge of the stolen character of the property sold. (Pen. Code, § 496, subd. (a); People v. Rodriguez (1986) 177 Cal.App.3d 174, 179 [222 Cal.Rptr. 809].) I also agree with the majority that the following rule applies to jury trials: “[W]hen the prosecution presents its case to the jury on alternate theories, some of which are legally correct and others legally incorrect, and the reviewing court cannot determine from the record on which theory the ensuing general verdict of guilt rested, the conviction cannot stand.” (People v. Green (1980) 27 Cal.3d 1, 69 [164 Cal.Rptr. 1, 609 P.2d 468] (Green); accord, People v. Perez (2005) 35 Cal.4th 1219, 1233 [29 Cal.Rptr.3d 423, 113 P.3d 100] (Perez).) Without citing any authority or providing any explanation, however, the majority asserts the Green rule does not apply to criminal bench trials. With this assertion, I disagree.
Although I have found no case from our Supreme Court applying the Green rule in the context of a bench trial, the Court of Appeal has done so. In People v. Butcher (1986) 185 Cal.App.3d 929 [229 Cal.Rptr. 910], the defendant was convicted in a bench trial of a felony offense. The record indicated that in finding the defendant guilty the trial court relied on an erroneous interpretation of the statute defining the offense, although the record also contained evidence that would have supported the guilty finding under a correct interpretation. (Butcher, at pp. 935-937.) Citing Green, supra, 27 Cal.3d at page 69, the Court of Appeal held, “it cannot be the law that a defendant may be convicted in circumstances where the conviction appears to be based upon a legally invalid theory of the law notwithstanding the presence of an alternative valid theory.” (Butcher, at p. 937.) Moreover, because the Green rule implements the important requirements of due process of law (U.S. Const., 14th Amend., § 1) that a guilty verdict rest both on a legally valid theory (Hedgpeth v. Pulido (2008) 555 U.S. 57, 58 [172 L.Ed.2d 388, 129 S.Ct. 530]) and on proof beyond a reasonable doubt of every essential element of the charged offense (In re Winship (1970) 397 U.S. 358, 364 [25 L.Ed.2d 368, 90 S.Ct. 1068]), the rule must apply whether a criminal defendant is tried by a jury or by a court. Thus, I conclude, in accord with Butcher, that where a trial court, in the course of pronouncing a decision finding a defendant guilty, articulates two alternative legal theories of guilt, one correct and the other incorrect, we must reverse the conviction unless we can say “beyond a reasonable doubt” that the court relied on the legally correct theory. (Chapman v. California (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 87 S.Ct. 824]; see People v. Swain (1996) 12 Cal.4th 593, 607 [49 Cal.Rptr.2d 390, 909 P.2d 994] [Chapman standard applies when *1306 jury is instructed with both correct and incorrect elements of offense]; People v. Calderon (2005) 129 Cal.App.4th 1301, 1306 [29 Cal.Rptr.3d 277] (Calderon) [Chapman standard applies when prosecutor presents both correct and incorrect theories of guilt to jury].)
From the record of Tessman’s bench trial, I cannot conclude beyond a reasonable doubt that the trial court relied on the legally correct theory of guilt (i.e., Tessman actually knew the necklace she sold at the pawnshop was stolen) rather than the legally incorrect one (i.e., Tessman should have known the necklace she sold at the pawnshop was stolen). In announcing its decision on the commercial burglary charge, the trial court stated twice in the span of less than two pages of reporter’s transcript that actual knowledge or constructive knowledge sufficed for conviction.[1] The only evidence the court cited in support of its finding on the knowledge element was the conflict between Marinova’s testimony about when she last saw the necklace Tessman sold at the pawnshop and Tessman’s statement to police about when she acquired the necklace. The lack of a credible explanation regarding possession would support an inference Tessman actually knew the necklace was stolen. (See People v. Boinus (1957) 153 Cal.App.2d 618, 622 [314 P.2d 787].) But it would also support an inference she acquired the necklace under suspicious circumstances from which she should have known it was stolen. Without a clearer statement of the trial court’s reasoning, and in light of its repeated statement that Tessman knew or should have known the necklace was stolen, I cannot say beyond a reasonable doubt that the court found Tessman actually knew the necklace was stolen. Therefore, I conclude Tessman’s commercial burglary conviction must be reversed. (Perez, supra, 35 Cal.4th at p. 1233; Green, supra, 27 Cal.3d at p. 69; Calderon, supra, 129 Cal.App.4th at p. 1306.)
*1307 In reaching the contrary conclusion, the majority dismisses the trial court’s references to Tessman’s constructive knowledge as “nothing more than a secondary slip of the tongue that did not reflect [the court’s] actual conclusions or reasoning.” (Maj. opn., ante, at p. 1304.) In so doing, the majority tries to bring this case within the rule that “where a judge’s statements as a whole disclose a correct concept of the law and its application, no secondary remarks should be deemed to have impeached his determination.” (People v. Cartier (1960) 54 Cal.2d 300, 313 [5 Cal.Rptr. 573, 353 P.2d 53] (Cartier); see People v. Grana (1934) 1 Cal.2d 565, 571 [36 P.2d 375] [court’s quotation of doctrine applicable only to civil case during criminal bench trial did not impeach finding of guilt].) That rule applies, the majority claims, because the trial court’s statement of decision “shows that it considered the two burglaries together, as part of a pattern of conduct, and that with respect to each count it was focused on whether Tessman in fact stole the respective victim’s jewelry.” (Maj. opn., ante, at p. 1304.) The majority further claims that “[bjecause the trial court plainly determined that Tessman stole from both victims, the record shows in a fairly unmistakable manner that the trial judge also found that Tessman knew the jewelry was stolen when she walked into the pawnshop.” (Maj. opn., ante, at p. 1304.) In my view, the record simply will not bear the interpretation the majority puts upon it.
In announcing its decision on the commercial burglary charge, the trial court never said Tessman stole Marinova’s necklace. It had no reason to do so, since the offense underlying the burglary charge was selling stolen property, not theft. At trial, the People presented no evidence that Tessman stole Marinova’s necklace. Indeed, the detective who testified at trial admitted there was no evidence Tessman had ever been inside Marinova’s home, and the prosecutor conceded in closing argument that the People had no such evidence. The prosecutor also stated that had there been such evidence, “we would have a different case [and] would have brought different charges,” presumably residential burglary of Marinova’s home. Because there was no evidence linking Tessman to Marinova’s home, however, the People charged Tessman with commercial burglary based upon her entry into the pawnshop with the intent to sell stolen property, and at trial the prosecutor introduced evidence and advanced argument in support of that theory. Hence, contrary to the majority’s reading of the record, in deciding that charge, the issue the court actually focused on was whether Tessman “either knew or had reason to know” the necklace she sold at the pawnshop was stolen. And, based on Tessman’s unsatisfactory explanation of how she acquired the necklace, the court actually concluded Tessman “knew the item or reasonably should have known the item was in fact stolen.” The court never determined that she, in fact, stole the necklace, as the majority erroneously asserts.
On this record, the trial court’s repeated references to what Tessman should have known about the stolen character of the necklace cannot reasonably be *1308 characterized as “nothing more than a secondary slip of the tongue.” (Maj. opn., ante, at p. 1304.) In my view, therefore, the majority incorrectly relies on the rule that “secondary remarks” cannot impeach a trial court’s finding of guilt “where a judge’s statements as a whole disclose a correct concept of the law and its application.” (Cartier, supra, 54 Cal.2d at p. 313.) “That rule is inapplicable here, ... for as just shown the ‘judge’s statements as a whole’ disclose an incorrect rather than a correct concept of the relevant law, embodied not merely in ‘secondary remarks’ but in his basic ruling . . . .” (People v. Ortiz (1964) 61 Cal.2d 249, 253 [37 Cal.Rptr. 891, 391 P.2d 163]; accord, Butcher, supra, 185 Cal.App.3d at p. 936.) Furthermore, because in its basic ruling on the commercial burglary charge the trial court articulated legally correct and incorrect theories of guilt, “and because it is impossible to tell under which theory the [court] reached its [decision], the [commercial burglary] conviction is suspect and must be reversed.” (People v. Brown (1991) 226 Cal.App.3d 1361, 1372 [277 Cal.Rptr. 309], citing Green, supra, 27 Cal.3d at pp. 69, 71.) Accordingly, I dissent from the portion of the majority’s opinion affirming Tessman’s commercial burglary conviction.
Appellant’s petition for review by the Supreme Court was denied June 11, 2014, S217458.

 It is unclear how the constructive knowledge standard found its way into the case. Near the beginning of its announcement of its decision on the record, the trial court stated: “I agree with [Tessman’s trial counsel] in the sense that the People are obligated to show to substantiate the burglary by entry into [the pawnshop] . . . that at the time the entry was made [Tessman] either knew or had reason to know that the necklace . . . that was pawned was in fact stolen.” (Italics added.) Tessman’s trial counsel, however, never mentioned the constructive knowledge standard articulated by the trial court. His closing argument mentioned only the actual knowledge standard: “So presumably it’s the People’s theory that Ms. Tessman committed a burglary because when she sold the jewelry at the pawn shop she must have known that it was stolen. Surely it wouldn’t be a crime for Ms. Tessman to sell jewelry at a pawn shop, if she didn’t know that it was unlawfully obtained.” (Italics added.) In her closing argument, the prosecutor mentioned neither actual nor constructive knowledge. In reply to the argument of Tessman’s trial counsel, the prosecutor argued: “[I]f there had been a lawful explanation there would have been no need [for Tessman] to give this false story that she got [the necklace] from somebody else. It was jewelry that did not belong to her, and she pawned it. That’s my theory on count 2.”