Filed 4/14/25  P. v. Williams CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>TRAVIS RON WILLIAMS,<br><br>    Defendant and Appellant. | 2d Crim. No. B332652<br>(Super. Ct. No.<br>F000240517002)<br>(San Luis Obispo County) |

This is the second appeal from a postjudgment order denying Travis Ron Williams's petition for resentencing (Pen. Code, § 1172.6)[1] after he was convicted of murder, burglary, and arson.  He contends the record does not establish that the trial court applied the correct legal standard in determining whether he, as a 15-year-old youth at the time of his crimes, formed the necessary mental state to be convicted of felony murder.  We affirm.

_____

[1]  All further statutory references are to the Penal Code.

*Factual and Procedural Background*

In 1997, appellant pleaded no contest to first degree murder (§§ 187, subd. (a), 189), second degree burglary (§ 459), and arson (§ 451, subd. (d)) and admitted a principal-armed-with-a-firearm enhancement (§ 12022, subd. (a)(1)). The change of plea was entered after the preliminary hearing based on the understanding that appellant and his cohort, Tommy Traughber, committed a home-invasion burglary in which appellant and Traughber kicked in the victim's (a 75-year-old-widow living alone) back door. The victim was shot in the back of the head at close range. Appellant was sentenced to 26 years to life in state prison. At the sentencing hearing, the trial court stated: "The court does not find that you actually pulled the trigger; that you actually were the one who did the shooting." There is a dispute about who was the actual shooter. Appellant was 15 years old when the offense was committed and tried as an adult.[2]

*Petition for Resentencing*

In 2019, appellant filed a petition seeking to vacate his murder conviction pursuant to section 1172.6 (former § 1170.95). The trial court denied the petition without an evidentiary hearing. We reversed the denial and remanded the matter with directions for the trial court to issue an order to show cause and to hold an evidentiary hearing. (*Williams*, *supra*, B301556.)

On remand, the trial court conducted a three-day, joint evidentiary hearing, addressing appellant's and codefendant Traughber's individual resentencing petitions. The People presented numerous witnesses and exhibits. Appellant presented

---

[2] These facts are taken from our prior appellant opinion. (*People v. Williams* (Nov. 17, 2020, B301556) [nonpub. opn.] (*Williams*).)

testimony from Dr. Paul Elizondo, a child adolescent and forensic psychiatrist who evaluated appellant. Dr. Elizondo testified about the brain development of 15-year-olds generally, and specially, about the effects of appellant's youth and trauma-related disorder on his conduct and mental state at the time of the murder.

After the hearing, the parties submitted additional briefing addressing the evidence presented. Appellant's briefing included a copy of Dr. Elizondo's 16-page written report summarizing his findings.

*The Trial Court's Ruling*

In September 2023, the trial court issued its oral ruling. As a preliminary matter, the trial court stated that it had "reviewed" the parties' briefing. It acknowledged how "difficult" the case was to decide 30 years "after the fact," which was also "complicated by [petitioners'] youth." The trial court nevertheless found appellant and Traughber were major participants who acted with reckless indifference to human life and denied their petitions. The trial court explained, "These two planned the crime. They executed the crime together. They are major participants. Neither one [was] the lookout or the . . . getaway driver."

Regarding its finding that appellant acted with reckless indifference, the trial court explained, "there's no question in the Court's mind based upon the evidence that's been presented that it was [appellant] who went to his mother's safe, secured the weapon [a .22 caliber pistol], knew that it was loaded and took that weapon with him in this burglary that they planned together."

The trial court further opined, the burglary "was from a residence. It was at night when [appellant and Traughber] got to

3

the residence.  The lights were on.  The car was in the driveway. Even a 15-year-old should have recognized that that meant someone was home and being armed with a loaded firearm or perhaps it had been given to Mr. Traughber by then, if at all. Even a 15-year-old, in the Court's eyes, should have recognized that he was acting recklessly and there was the likelihood of death."

The trial court explained that appellant's "own statements have him going into the house with Mr. Traughber. . . .  It's clear to the Court that [appellant] knew that Ms. Agueda had been killed or at least shot.  Even if [appellant] wasn't in the same room, he admitted hearing the shot, and . . . the way . . . this crime unfolded, it's clear that [appellant and Traughber] were together the entire time, meaning together doing these things, not necessarily in the same room at all times, but they were together, communicating with one another."

According to the trial court, it had "no doubt that based on these things, even if [appellant] was not the actual shooter, he knew that a shooting had occurred.  Then he goes along with getting into [the victim's] car.  He has his brother hide the fruits of the crime and the weapon, the firearm.  He goes along with Mr. Traughber in picking up these young wom[en], cruising about town, essentially acting like teenagers."

The trial court noted, "the cases have told me that I need to look at those factors, and these are not factors the way they unfolded that point to someone who was not acting with reckless indifference to human life or who, when the crime unfolded in the manner that it did, decided to separate themselves from the crime."  The trial court added that "while it's not clear what

4

[appellant's] role was in the burning of the car, it's clear that he was there.  His own admissions establish as much."

Regarding appellant's youth at the time of the crimes, the trial court acknowledged appellant was younger than Traughber, who was 17 years old.  Given this age difference, the trial court reasoned, "I think it is a closer call in terms of whether the youthfulness offset or negated the recklessness with which [appellant] proceeded.  Nevertheless, for the reasons I have already stated, taking a loaded gun to a residence at night with every reason to believe someone is present, even a 15-year-old should understand that that is reckless and likely to lead to the loss of human life.  So I am not going to find that it is a factor that negates the findings the Court needs to make . . . here today.  But as I have already said, it's an incredibly important factor in terms of parole, and I'm pleased to see that the parole board has already made a decision to release [appellant] because of his youth."

*Section 1172.6*

Effective January 1, 2019, the Legislature enacted Senate Bill No. 1437 (2017-2018 Reg. Sess.), which significantly limited the scope of the felony-murder rule, eliminated the natural and probable consequences doctrine as it relates to murder, and eliminated convictions for murder based on a theory under which malice is imputed to a person based solely on that person's participation in a crime.  (See, generally *People v. Reyes* (2023) 14 Cal.5th 981, 986; *People v. Lewis* (2021) 11 Cal.5th 952, 957, 959; *People v. Gentile* (2020) 10 Cal.5th 830, 842-843.)

Senate Bill No. 1437 also created a special procedural mechanism for those convicted under the former law to seek retroactive relief under the law as amended.  (*People v. Strong*

5

(2022) 13 Cal.5th 698, 707-708.) A defendant commences that procedure by filing a petition containing a declaration that, among other things, the defendant could not presently be convicted of murder under the current law. (*Id.* at p. 708.)

When, as here, the petitioner has made a prima facie showing he or she is entitled to relief pursuant to section 1172.6, the trial court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts. (*Id.*, subd. (d)(1).) At that hearing, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under the law as amended. (*Id.*, subd. (d)(3).) The petitioner and the prosecutor may offer new or additional evidence to meet their respective burdens. (*Ibid.*)

*Discussion*

Appellant does not challenge the sufficiency of the evidence supporting the trial court's order denying his section 1172.6 petition for resentencing. His sole contention is that the record does not establish that the trial court applied the correct legal standard in determining whether he, as a then 15-year-old youth, formed the necessary mental state to be convicted of felony murder.

The law recognizes that the "hallmark features" of youth include "immaturity, impetuosity, and failure to appreciate risks and consequences." (*Miller v. Alabama* (2012) 567 U.S. 460, 477.) Several appellate decisions have recently considered the relevance of a defendant's youth as a factor in the totality of the circumstances to determine whether the defendant acted with reckless indifference to human life. (See, e.g., *People v. Jones*

6

(2022) 86 Cal.App.5th 1076, 1091-1093 [remanding for trial court to have a "meaningful opportunity" to consider defendant's youth as part of the totality of the circumstances in determining reckless indifference]; *In re Moore* (2021) 68 Cal.App.5th 434, 454-455 [defendant's youth is a relevant factor in determining whether he acted with reckless indifference to human life]; *People v. Harris* (2021) 60 Cal.App.5th 939, 960 [defendant's youth made it unclear whether he was aware of dangers posed by nature of crime, weapons, and other participants' criminal histories]; see also *People v. Pittman* (2023) 96 Cal.App.5th 400, 416-418 [youth is relevant factor in determining whether defendant acted with implied malice].)

Appellant contends the record does not establish that the trial court applied the controlling law. For example, he contends the trial court made repeated statements about "what it thought a 15-year-old *should* be capable of thinking," rather than what he was actually thinking the night of the murder. Appellant also contends the trial court only "*briefly*" acknowledged the evidentiary testimony of Dr. Elizondo and made no mention of the "trauma factors" Dr. Elizondo found relevant. Appellant concludes there was, "*at a minimum*, some ambiguity in the court's reasoning." These contentions are meritless.

"Perhaps the most fundamental rule of appellate law is that the judgment challenged on appeal is presumed correct, and it is the appellant's burden to affirmatively demonstrate error." (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573; *People v. Sullivan* (2007) 151 Cal.App.4th 524, 549.) We also adhere to the well-established principle that we review the legal correctness of a ruling, not the trial court's rationale. (*People v. Zapien* (1993) 4 Cal.4th 929, 976.)

Here, the trial court was not required to provide a rationale for its decision. (See *People v. Tessman* (2014) 223 Cal.App.4th 1293, 1302.) However, when the trial court offers an explanation, its remarks generally "cannot be used to show that [it] misapplied the law or erred in its reasoning." (*Ibid.*) A limited exception exists only where the judge's comments, taken as a whole, unambiguously "disclose an incorrect rather than a correct concept of the relevant law, embodied not merely in 'secondary remarks' but in [the judge's] basic ruling . . . ." (*People v. Ortiz* (1964) 61 Cal.2d 249, 253; see also *In re Jerry R.* (1994) 29 Cal.App.4th 1432, 1440.)

Our review of the trial court's statements, taken as a whole, establish that it understood and properly applied the law. This is a not case where the trial court did not have a "meaningful opportunity" to consider appellant's youth as a relevant factor in determining whether he acted with reckless indifference at the time of his crime. To the contrary, defense counsel made appellant's "neuropsychological impairments" and "trauma-related disorder" the main issue of his case and provided extensive briefing to that effect.

That the trial court did not refer to or discuss certain evidence when it rendered its ruling does not mean it misunderstood or incorrectly applied the law. Even so, the trial court was not bound by Dr. Elizondo's testimony and opinion. (See *In re J.S.* (2024) 105 Cal.App.5th 205, 212-213.) As the trial court unambiguously stated, "there is no question in the Court's eyes that [appellant] was a major participant acting with reckless indifference to human life."

We also reject appellant's contention that the trial court's statements regarding his youth as an important factor in terms of

a parole decision misstated the relevance of his adolescence. The trial court's comments that youth is "an incredibly important factor in terms of parole" did not undermine the trial court's previous findings. Considering the trial court's statements as a whole, it is apparent that it did not believe appellant's youth negated his reckless indifference to human life.

*Disposition*

The judgment (order denying petition for resentencing) is affirmed.

NOT TO BE PUBLISHED.


                                        YEGAN, J.

We concur:


        GILBERT, P. J.


        CODY, J.


9

Jesse J. Marino, Judge
Superior Court County of San Luis Obispo
_____

Law Offices of John Derrick and John Derrick, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Kenneth C. Byrne, Supervising Deputy Attorney General, and Allison H. Chung, Deputy Attorney General, for Plaintiff and Respondent.