Filed 12/1/25  P. v. Spears CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RODNEY SPEARS,<br><br>    Defendant and Appellant. | 2d Crim. No. B341703<br>(Super. Ct. No. 24ARCF00020)<br>(Los Angeles County) |

Rodney Spears appeals after a jury convicted him of carjacking (Pen. Code, § 215, subd. (a)) and robbery (§ 211). [1] Appellant contends the trial court erroneously denied his petition for mental health diversion under section 1001.36.  We will affirm.

### FACTUAL AND PROCEDURAL BACKGROUND
#### *Trial*

Dylan Ferro was at a gas station to put gas in his rental car when appellant approached from behind, put his arm around Ferro's chest, and "pulled a knife."

---

[1] Undesignated statutory references are to the Penal Code.

Appellant said "Where are the keys?  Where's the cash?" or "Give me the keys.  Give me the cash."  Ferro gave appellant the keys but told him the cash was in the car.  Appellant left in Ferro's rental car.  The car contained a laptop, one thousand dollars cash, credit and debit cards, and a suitcase full of clothes.

At about 8:00 p.m. that evening, law enforcement arrested appellant following a traffic stop.  Appellant was the vehicle's driver and sole occupant.  Law enforcement recovered about $600 in appellant's possession.  The car contained around $300 in new clothes.

Surveillance video captured the incident.  Ferro testified the perpetrator "could be" appellant but said he "can't be a hundred percent sure."

The jury convicted appellant of carjacking (§ 215, subd. (a)) and robbery (§ 211).  As to both offenses, it found true the allegation appellant personally used a deadly and dangerous weapon (knife) (§ 12022, subd. (b)(1)).  The court sentenced appellant to a total term of six years in prison.

*Mental Health Diversion*

Before trial, appellant petitioned for mental health diversion under section 1001.36.  Dr. Robin Campbell conducted a psychological evaluation of appellant.  Appellant had previously been diagnosed with schizophrenia.  He began hearing voices in 2022.  He experienced a range of hallucinations and delusions.  He began using methamphetamine in 2023 after his brother died.

Before the charged offenses, appellant was hearing voices and suffered a panic attack.  He had not been taking medication and had used methamphetamine the day before.

Dr. Campbell diagnosed appellant with schizophrenia complicated by substance abuse.  Appellant "would also qualify for a diagnosis of an amphetamine-type use disorder."  Dr. Campbell opined appellant "would not pose an unreasonable risk

2

of danger to public safety if his psychiatric symptoms were controlled with treatment." "A dual-diagnosis treatment program that addresses his psychiatric disorder and substance abuse disorder would be most beneficial."

Appellant submitted a conditional letter of acceptance to a three-month residential treatment program. The letter stated "'[c]lients can be 'stepped down' to Recovery Bridge Housing and outpatient aftercare."

At the hearing, the prosecutor opposed diversion given the seriousness of the charges and appellant's record. The prosecutor described appellant's conduct in his two probation cases. In one case, appellant tried to break into a woman's apartment. In another, he damaged hotel guest doors with a baseball bat. When later confronted by hotel security, appellant "pull[ed] out" a machete and said, "'I will slice you the fuck up,'" and, "'Sling an arm at me and I will slice your fucking arm off.'" The prosecutor argued appellant was dangerous and "likely to commit a super strike."

The court "agree[d] that [appellant] is a danger." It determined the three-month program was not appropriate. The court indicated an in-patient program with "some level of security provided for the [statutory maximum] two-year period" would "meet [appellant's] particularized needs." The court also asked about or discussed the People's offer, appellant's potential prison time, and the existence of any proof problems. The court denied mental health diversion.

## DISCUSSION

### Section 1001.36

Section 1001.36 authorizes mental health diversion for defendants who meet eligibility and suitability criteria. (*Vaughn v. Superior Court* (2024) 105 Cal.App.5th 124, 133 (*Vaughn*).) "Eligibility entails satisfaction of two prongs: (1) a defendant has

been diagnosed with a recognized mental health disorder, and (2) the disorder was 'a significant factor in the commission of the charged offense.'" (*Ibid.*; § 1001.36, subd. (b)(2).) If eligibility is established, "the court must consider whether the defendant is suitable for pretrial diversion." (§ 1001.36, subd. (c).)

"A defendant is suitable if: (1) in the opinion of a qualified mental health expert, the defendant's mental health disorder would respond to treatment; (2) the defendant consents to diversion and agrees to waive their speedy trial rights; (3) the defendant agrees to comply with treatment requirements; and (4) the defendant will not pose an 'unreasonable risk of danger to public safety' as defined in section 1170.18 if treated in the community." (*Vaughn*, *supra*, 105 Cal.App.5th at p. 134; § 1001.36, subd. (c)(1)-(4).) Such a risk of danger "exists only if the evidence indicates it is likely the defendant will commit a so-called 'super strike' violent felony." (*Sarmiento v. Superior Court* (2024) 98 Cal.App.5th 882, 890 (*Sarmiento*).)

Super strike offenses include "any homicide offense (including any attempted homicide offense), solicitation to commit murder, assault with a machine gun on a peace officer or firefighter, possession of a weapon of mass destruction, any serious or violent felony punishable by life imprisonment or death, and certain sex offenses." (*People v. Williams* (2021) 63 Cal.App.5th 990, 1001; see also § 667, subd. (e)(2)(C)(iv).)

The court must be "satisfied" the recommended program "will meet the specialized mental health treatment needs of the defendant." (§ 1001.36, subd. (f)(1)(A)(i); *Sarmiento*, *supra*, 98 Cal.App.5th at p. 892.) "Before approving a proposed treatment program, the court shall consider the request of the defense, the request of the prosecution, the needs of the defendant, and the interests of the community." (§ 1001.36, subd. (f)(1)(A)(ii).)

4

Finally, the court retains residual discretion to deny diversion. (*Sarmiento, supra*, 98 Cal.App.5th at p. 892.) This discretion "must be exercised "'consistent with the principles and purpose of the governing law.""" (*Ibid*.; see also § 1001.35.)

*Standard of Review*

"A trial court's ruling on a motion for mental health diversion is reviewed for an abuse of discretion, and factual findings are reviewed for substantial evidence." (*People v. Whitmill* (2022) 86 Cal.App.5th 1138, 1147.)

""""[T]he term judicial discretion "implies absence of arbitrary determination, capricious disposition or whimsical thinking."' [Citation.] '[D]iscretion is abused whenever the court exceeds the bounds of reason, all of the circumstances being considered."""" (*People v. Pacheco* (2022) 75 Cal.App.5th 207, 213.) "'A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence [citation].'" (*People v. Graham* (2024) 102 Cal.App.5th 787, 795.)

*Contentions*

Appellant challenges the court's denial of the mental health diversion petition on several grounds. First, he contends the trial court impermissibly "collapsed the analysis of the dangerousness prong under section 1001.36, subdivision (c)(4) into the question of a suitable treatment program under section 1001.36, subdivision (f)(1)(A)(i) . . . ." We disagree.

Section 1001.36, subdivision (c)(4) provides that in assessing risk of danger, the court may consider, among other factors, "the defendant's treatment plan" and "any other factors that the court deems appropriate." (*Id*., subd. (c)(4).) Thus, the court could properly consider appellant's proposed treatment program in evaluating his dangerousness under section 1001.36.

5

Appellant's reliance on *Sarmiento* is unavailing.  There, the trial court "impliedly" acknowledged there was not a likelihood the defendant would commit a super strike if granted diversion, and the court "referenced his 'residual' discretion under the statute . . . ." (*Sarmiento*, *supra*, 98 Cal.App.5th at p. 895.)  Here, the court did not cite its residual discretion.  Instead, the court agreed appellant was "a danger" after the prosecutor argued he was "likely to commit a super strike."  The court impliedly found appellant was likely to commit a super strike offense if treated in the community (§ 1001.36, subd. (c)(4)).

Second, appellant contends the court improperly treated the diversion hearing like a sentencing hearing.  Appellant further asserts the court improperly conditioned diversion on the prosecutor's consent.  Again, we disagree.

"Ordinarily statements made by the trial court as to its reasoning are not reviewable." (*In re Jerry R.* (1994) 29 Cal.App.4th 1432, 1440.)  A limited exception exists when the court's comments, as a whole, "disclose an incorrect rather than a correct concept of the relevant law, embodied not merely in 'secondary remarks' but in [the court's] basic ruling . . . ." (*People v. Ortiz* (1964) 61 Cal.2d 249, 253; see also *People v. Tessman* (2014) 223 Cal.App.4th 1293, 1302-1303.)

The court's comments, viewed as a whole, do not disclose an incorrect concept of the law.  Its inquiry and comments regarding proof issues, appellant's potential prison time, and the People's offer simply reflect a desire to grasp the case's practical reality.  Grappling with that reality did not mean the court treated the hearing like a sentencing or imposed an added condition for diversion.  In line with section 1001.36, the court's denial was ultimately predicated on appellant's dangerousness and the failure of the proposed treatment to meet appellant's

6

particularized needs.  Secondary remarks do not invalidate its basic ruling.

Appellant next contends the court did not find he was likely to commit a super strike as required by section 1001.36, subdivision (c)(4).  But section 1001.36 does not require that express finding.  Instead, the statute provides courts "must *consider*" suitability (*id.*, subd. (c), italics added), including whether the defendant "pose[s] an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community."  (§ 1001.36, subd. (c)(4).)  Given the absence of evidence to the contrary, we presume the court knew and applied "'the correct statutory and case law.'"  (*People v. Thomas* (2011) 52 Cal.4th 336, 361; *People v. Moine* (2021) 62 Cal.App.5th 440, 451 [analyzing whether record supported "the trial court's implied finding that Moine was likely to commit a super strike offense"].)

Appellant argues that even if the court made the requisite finding, the evidence does not support it.  We conclude substantial evidence supports the court's implied finding that appellant was likely to commit a super strike offense if treated in the community.  (§ 1001.36, subd. (c)(4).)

Appellant's prior convictions and current charges constituted a pattern of alarming conduct.  Appellant attempted to break into a woman's apartment.  In another incident, appellant "pull[ed] out" a machete and said, "'I will slice you the fuck up,'" and, "'Sling an arm at me and I will slice your fucking arm off.'"  In the current case, appellant escalated by employing a knife to commit a carjacking and robbery.  Appellant's weapon use elevated the risk he would commit a super strike offense, such as a homicide offense.  Appellant's hallucinations, delusions, and methamphetamine use further amplified this risk.

7

Dr. Campbell did opine that appellant "would not pose an unreasonable risk of danger to public safety if his psychiatric symptoms were controlled with treatment." However, a brief residential program with subsequent services stood little chance of adequately controlling appellant's severe, longstanding symptoms. Appellant's medication compliance in custody was not guaranteed to continue upon release. In fact, appellant told Dr. Campbell that psychotropic medication he received when hospitalized "had no effect." Appellant was unlikely to continue taking medication if he believed it to be ineffective. Additionally, although appellant had been taking medication, Dr. Campbell's report indicated he "continues" to hear voices and "have some delusional thoughts."

Finally, appellant contends the court "abused its discretion when it found the proposed treatment would not meet appellant's mental health needs." Once again, we disagree.

Under section 1001.36, subdivision (f)(1)(A)(i), the trial court must be "satisfied that the recommended inpatient or outpatient program of mental health treatment will meet the specialized mental health treatment needs of the defendant." (*Id.*, subd. (f)(1)(A)(i).) While this subdivision does not create an added eligibility or suitability requirement, a court can still "reject diversion" if it concludes a proposed treatment plan "could not effectively address the defendant's particular diagnosis." (*Sarmiento, supra*, 98 Cal.App.5th at p. 895, fn. omitted.)

Here, the court could reasonably conclude a brief residential program with subsequent services would not meet appellant's specialized needs, given his symptoms' severity and duration. Moreover, the treatment letter referenced appellant's "addiction severity" and "self-defeating and maladaptive behavior," but not his schizophrenia. While appellant's counsel described the placement as "dual diagnosis," the letter did not

8

indicate the treatment would directly address appellant's core mental health issue.

Appellant argues "the trial court was not positioned well to opine what treatment would address appellant's mental health needs." But the statute tasks the trial court with making that determination. The court was not bound to follow Dr. Campbell's opinion by virtue of her expert status. (*In re J.S.* (2024) 105 Cal.App.5th 205, 212 ["any trial court is not bound by an expert's . . . opinion"].) Furthermore, Dr. Campell's report did not specifically address the treatment program appellant secured. The court did not abuse its discretion in concluding the proposed treatment would not meet appellant's specialized needs.

DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

CODY, J.

We concur:

YEGAN, Acting P. J.

BALTODANO, J.

9

William Sadler, Judge
Melissa R. Hammond, Judge
Superior Court County of Los Angeles

_____

Michael H. Casey, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Julie A. Harris and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.